## ·COOPER *v.* DOWNING.

---

PATENTS; INTERFERENCE; RIGHT TO MAKE CLAIMS.

1. In an interference involving the question of whether one of the parties is entitled to make the claims of the issue, the Commissioner of Patents properly refuses to permit such party to take testimony as to what those skilled in the art would understand from a study of his original application and disclosure, it being the duty of the tribunals of the Patent Office to determine for themselves what the application discloses; and where such party has copied the claims of the issue from his adversary's patent, the burden of proof is upon him to clearly show that the important feature of the issue can be reasonably read into his application and disclosure.

2. Where the counts of the issue in an interference call for a car end composed of two sections, or a plurality of joined sections of sheet metal, provided with stiffening ribs or corrugations which coalesce at the junction of the sections, the sections having connecting flanges extending from the protuberant sides of the corrugations, the corrugated ribs must so coalesce with the flanges that the channels formed in pressing the corrugations into the metal must be continuous across the end of the car, irrespective of the joints formed at the connections of the sections where the flanges are riveted together; and where the question in such an interference is whether one of the parties has the right to make the claims of the issue, and

in the claims of his original application is no statement to the effect
that the ribs are continuous or that they coalesce at the flanges
where the sections are riveted together, but he states that the ribs
terminate at the flanges, and he makes no point of the two vertical
ribs adding particular strength to the car end, mentioning them only
as supports for a portion of the load of the roof, and depending
chiefly· upon the horizontal ribs and the method of connecting the
sheets at the flanges to withstand the stress to which a car end is
usually subjected, and apparently treating the sections as separate
entities and the ribs as terminating at the flanges, but so arranged
that when the sections are riveted together the ribs will be in align-
ment, to grant him the claims of the issue would be to give him
something not disclosed in his drawings and which could only be
read into his specifications and claims by a forced construction, and
his adversary is entitled to an award of priority.

No. 1034.    Patent Appeals.    Submitted May 10, 1916.    Decided May 29,
                              1916.

HEARING on an appeal from decision of the Commissioner of
Patents in an interference proceeding.                    *Reversed.*

The facts are stated in the opinion.

*Mr. F. R. Cornwell, Mr. L. S. Bacon,* and *Mr. J. H. Milans*
for the appellant.

*Mr. O. R. Barnett, Mr. P. H. Truman,* and *Mr. John M. Coit*
for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of
Patents in an interference proceeding holding appellee, Ira S.
Downing, entitled to the following claims copied from a patent
issued to appellant, James J. Cooper:

"1. A car end composed of two sections of sheet metal pro-
vided with stiffening ribs or corrugations which coalesce at the
junction of the sections, the said sections having connecting
flanges extending from the protuberant sides of the corrugations.

"2. A car end made up of a plurality of joined sections of sheet metal in which are pressed stiffening corrugations which coalesce at the junction of the sections, the said sections having connecting flanges extending from the protuberant sides of the corrugations."

The counts of the issue unquestionably require the depression caused by the rib or corrugation in the metal to extend from one section of the car end to another. It must not be interrupted, as would occur if the connecting flanges should extend into and across the channel formed by the two aligned corrugations. In other words, the corrugated ribs must so coalesce with the flanges that the channels formed in pressing the corrugations into the metal must be continuous across the end of the car, irrespective of the joints formed at the connection of the sections where the flanges are riveted together.

The case turns on the right of Downing to make the claims, with the burden resting upon him. If he can establish this right, priority is conceded. The Law Examiner sustained a motion to dissolve the interference, on the ground that Downing, in the light of his application and disclosure, was not entitled to make the claims. The Board of Examiners in Chief held that they "would affirm the decision of the Law Examiner were it not for the following consideration. The question of new matter and right to make the claim in a case of this kind depends upon what those skilled in the art would clearly understand to be intended by the original disclosure. While we do not gather from the original papers that the construction was intended to be such as is required by the issue, it is readily conceivable that those skilled in the art, guided by their special knowledge regarding the pressing of iron plates, would know that Downing's car would naturally be built in such a way that it would necessarily satisfy the issue. It may be that there would be no question in their minds, upon reading the Downing application, of building it in any other way. For this reason we believe that the decision of the Law Examiner should be reversed as to each of the motions, in order that the parties may take testimony, if they so desire, to establish their dates of actual invention, or

what those skilled in the art would understand from a study of the original applications of the party Downing, or both."

The Commissioner of Patents properly refused to hear evidence as to what was intended by Downing's original application and disclosure, holding that it is the duty of the tribunals of the Patent Office, composed of men presumed to be sufficiently expert in understanding technical terms and the state of the art, to determine for themselves what an application discloses. He then held that though Downing's "drawing is somewhat obscure," the statements of the specification are sufficiently "clear as to the function of the channels under consideration." He therefore refused to sustain the Examiner in dissolving the interference, and awarded priority to Downing.

Downing's disclosure, as shown in his drawings, is not only "obscure," but totally fails to throw any light upon the issue. In his specification, he states: "The sheets are formed with substantially vertical ribs or corrugations. Preferably each plate is formed with two such ribs which align with the corresponding ribs on the other plate, the ribs preferably terminating at the flanges, so that they form together, in effect, a pair of posts or load carrying elements extending from substantially the roof down to the floor of the car. In the spaces between the ribs, and in the spaces between such ribs and the edges of the sheets, are formed transversely extending ribs. With the corrugations or ribs so disposed on the end, the structure is capable of withstanding all the usual stresses and pressures exerted against the end of a railway car. The structure is very stiff and is capable of carrying a part of the load of the roof." Downing's claims touching this feature are as follows:

."5. A sheet metal end structure for railway cars formed with strengthening ribs pressed out of the metal and extending from top to bottom of the end and spaced apart, and similarly formed transverse ribs noncontinuous with said vertical ribs and arranged in the spaces between the first-named ribs and between said first-named ribs and the side margins of said end.

"6. A sheet metal end structure for railway cars comprising upper and lower sheets formed with flanges at their meeting

edges which are secured together, with substantially horizontal strengthening ribs, pressed out of the metal, and with substantially vertical ribs similarly formed which terminate at said flanges, the vertical ribs of one sheet being in alignment with those of the other.

"7. A sheet metal end structure for railway cars formed at its upper edge with means for supporting the roof of the car, and provided with one or more vertically extending strengthening ribs terminating within the upper and lower edges of said structure, for the purpose described."

It will be observed that there is no statement to the effect that the ribs are continuous or that they coalesce at the flanges where the sections are riveted together. On the other hand, it is expressly stated, both in the specification and in claim 6, that the ribs terminate at the flanges. Nor does Downing make a point of the two vertical ribs, adding particular strength to the car end other than as a support for "a portion of the load of the roof," which, from common knowledge, is not great. He depends chiefly upon the horizontal ribs and the method of connecting the sheets at the flanges to withstand the stress to which a car end is usually subjected. True, he speaks in his specification of the vertical ribs forming a pair of posts or load carrying elements extending from substantially the roof down to the floor of the car. In claim 6 he describes the vertical ribs as terminating at the flanges and "the vertical ribs of one sheet being in alignment with those of the other."

But these expressions must be read in the light of his entire disclosure, and nowhere is it even intimated that the vertical ribs are to coalesce at the flanges in the manner described in the claims of the issue. If Downing had in mind a continuous rib extending from the top to the bottom of the car end, and coalescing at the junction of the sections, it is not clear why in his claim he should describe its parts as in alignment. Throughout, he seems to treat the sections as separate entities, and the ribs as terminating at the flanges but so arranged that when the sections are riveted together the ribs will be in alignment.

We think, therefore, that Downing had in mind only a series

of ribs extending across the sections so arranged that when the sections were connected the ribs would be in alignment. To grant him the claims in issue is to give him something not disclosed in his drawings, and which can only be read into his specification and claims by a forced construction. The statute requires that "before any inventor or discoverer shall receive a patent for his invention or discovery, he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." Rev. Stat. sec. 4888, Comp. Stat. 1913, § 9432.

We are not convinced that Downing's application so clearly explains the principle here involved that any person skilled in the art would be led by his disclosure to construct a car end according to the claims of the issue. In reaching the conclusion as to what one skilled in the art would do, we are confined to Downing's application as originally filed. Would the idea of coalescing the ribs at the junction of the sections occur to one reducing his invention to actual practice from the disclosure contained in his application? We think not. The rule in such cases is stated by this court in *Manly* v. *Williams,* 37 App. D. C. 194, as follows: "The law is well settled that amendments will only be permitted to relate back to the date of the filing of the original application, where they can clearly be sustained on the claims and specifications as originally made. The law does not permit such an enlargement of the original specifications as will interfere with other inventors who have acquired intervening rights. 'Courts should regard with jealousy and dis-

favor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use.' *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053."

The scope of the Cooper patent is emphasized by his claim 10, as follows:

"10. In a car end, a sheet metal panel provided with stiffening corrugations and having an attaching flange shaped to accommodate said corrugations."

The burden is upon Downing to establish his right to extract from Cooper's patent the important feature of the issue, and before he will be permitted to do this he must clearly show that it can reasonably be read into his application and disclosure. This, we think, he has failed to do.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.                                    *Reversed.*