## STEENSTRUP v. MORTON.

Court of Appeals of District of Columbia.

Submitted January 16, 1929. Decided February 4, 1929.

No. 2112.

Alex D. Lunt and Charles E. Tullar, both of Schenectady, N. Y., and Harrison F. Lyman, of Boston, Mass., for appellant.

Harry D. Morton, of New York City, for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from the Commissioner of Patents in an interference proceeding awarding priority of invention to appellee Morton. The issue is in two counts, as follows:

"1. In an arc welding apparatus wherein a welding head is arranged to move with relation to the work to be welded and wherein means are arranged to feed a fusible electrode through said head toward the work automatically at a rate depending upon a function of the energy at the arc, the combination with said welding head of means for guiding the arc along the surfaces to be welded and for adjusting the position of said welding head in accordance with irregularities in the surfaces to be welded.

"2. An arc welding apparatus comprising a welding head arranged continuously to feed a welding electrode to the work, and means arranged to adjust the position of the welding head with respect to the work so as to keep the length of electrode projecting from the welding head substantially constant."

It appears that appellant, Steenstrup, was granted a patent, including the counts in issue, July 22, 1924, on an application filed January 2, 1920. The counts in interference are claims 2 and 3 of the Steenstrup patent. The Morton application, involved in interference, was filed December 2, 1918, and the claims in issue were taken from the Steenstrup patent and presented as an amendment to the Morton application, under date of September 24, 1924.

The work to be welded consists of two plates, having beveled abutting edges, forming a groove, in which the fused material of the electrode is deposited, and the issue involves the method of keeping this electrode in perfect alignment and in proper relation to the welding seam. In both devices, this is sought to be accomplished by a guiding device, which follows the seam, and to which the welding electrode is attached.

The invention relates to an arc welding apparatus, and particularly to means for guiding the electrode along the surface to be welded, and for adjusting the position of the welding head in accordance with irregularities in the surface to be welded. The Steenstrup apparatus consists of a roll or wheel adapted to traverse the seams to be welded. This is so adjusted to the welding head that, in traversing the seam and passing over irregularities in the work, which may consist of elevations or depressions, or horizontal irregularities, it will be raised, or lowered, or follow the wheel in horizontal irregularities, in such a manner that the welding head will follow the line of the seam in the metal to be welded, and at the same time retain a uniform position with reference to the welding surface. No question is raised as to the complete operativeness of the Steenstrup device.

In the Morton device the welding head, through which the electrode is fed, is pivotally connected to a device mounted on two wheels placed in tandem. The wheels are arranged to follow the seam to be welded, rigidly connected, with the rear or right-hand wheel located in proximity to the fusible electrode; the wheel, of course, moving some distance in advance of the electrode. It is this rear wheel that Morton relies upon to respond to the limitations of the interference. A mere glance, however, at the Morton device, discloses that, when the front or left-hand wheel strikes, for example, a hump, the rear end of the device, which carries the elec-

trode, will be depressed nearer the work than normal, and, if the hump is sufficiently abrupt and high, the projecting electrode will be brought into contact with the welding surface, thus creating a short circuit and destroying the welding function. On the other hand, if the front wheel strikes a depression, the electrode will be raised a corresponding distance from the welding surface, again interfering with the welding process. If there is an irregularity in the horizontal welding alignment, the attempt to negotiate it, by raising the front wheel from the surface and keeping the rear wheel in the seam to be welded, will throw the electrode out of alignment, both horizontally and perpendicularly, since any lifting of the front wheel tends to bring the electrode nearer to the welding surface, and diverting of the rear wheel out of a straight line will throw the electrode out of alignment.

Coming, now, to the ground upon which the motion to dissolve is based, it is urged that, in respect of count 1, the Morton disclosure does not support the averment in the count calling for "means for guiding the arc along the surface to be welded, and for adjusting the position of said welding head in accordance with irregularities in the surface to be welded." It is conceded by the tribunals below that there is nothing in the Morton disclosure about. irregularities in the work being traversed by the rolls, but it is held that this should not deprive Morton of the right to make the claims. If, as a matter of fact, irregularities should be encountered and the rolls would function in the manner called for by the counts.

This difficulty is attempted to be overcome in the decision of the board by the statement "that there is no limitation in the counts as to the height or depth of the irregularities; hence, with an irregularity of relatively small size, the displacement of the electrode would not be very great, and the effect upon the length of the arc would not be so serious as to render the apparatus inoperative. The other answer is that it is the right-hand roll that controls the arc, when the material of the electrode is deposited on or about the irregularity. The distance of the right-hand roll from the electrode in the Morton apparatus is not substantially different from the distance in the Steenstrup construction, and the control of the arc length would appear to be the same in the two cases. Regarding the right-hand roll of Morton as the adjusting means of the counts, it is thought the Morton construction fairly responds to all the limitations of such counts." ·

■ This overlooks a very important consideration, namely, that, when an applicant attempts to copy claims from an existing patent, it is incumbent upon him to show clearly, in his specification and structure, the means for accomplishing the object called for in the claims. The board, in support of its holding, cites claims 17, 18, and 19 of the Morton application. These claims merely call for "means for supplying current to the strip at a point near the arc, and means adapted to bear upon the work for maintaining a substantially constant distance between said last-named means and the work." But it will be seen at a glance that this can only be accomplished when the Morton device is operating on a straight seam with a perfectly level surface. Nothing is claimed by Morton as to adjusting his device to irregularities, and, broad as his claims are, in calling for means, they cannot be extended to embrace count 1 of the interference.

The motion to dissolve as to count 2 is based upon the failure of the Morton disclosure to support that part of the count calling for "means arranged to adjust the position of the welding head with respect to the work, so as to keep the length of the electrode projecting from the welding head substantially constant." This claim must be read in the light of the Steenstrup disclosure. In his specification, he embraces in a few words the object of his invention, as follows:

"A further object of my invention is to provide means, co-operating with the universal mounting for the welding head, to guide and position the welding head with respect to the work, so that the welding arc accurately follows irregularities in the joint or seam to be welded, while the distance of the welding head from the work is maintained substantially constant."

This discloses the object that Steenstrup had in mind, and count 2, calling for means so arranged as to adjust the position of the welding head, can only be interpreted as referring to the automatic adjustment of the length of the electrode projecting from the welding head and kept constant, regardless of vertical irregularities, humps or depressions, in the joint or seam. This is accomplished in the Steenstrup device by the universally mounted arm carrying the welding head, working automatically in co-operation with the tracker roll.

The fundamental difference between the devices of Morton and Steenstrup is that Morton's machine, apart from the electrical features with which we are not here con-

cerned, is merely a portable welder mounted on wheels, to be pushed or shoved along flat work by the hand of the operator. There are no automatic means whatever for moving the welding head with reference to the work. It is a mere hand tool, mounted on wheels, to be pushed about and held in an upright position by the operator. From the slightest observation of the device, it is clear that Morton had no thought of irregular seams, as his mechanism shows no capability of being used on an irregular seam, nor of maintaining the constant length of the projecting electrode when humps or depressions occur in the seam.

On the other hand, Steenstrup discloses an automatic arc welding machine in which the welding head is mounted at the end of an arm arranged on a pivot or swivel, so that the welding head can move laterally, and is also arranged on a pivot in a plane at right angles to the first pivot, so that the arm carrying the welding head can rise or fall. These two pivots constitute what Steenstrup calls his universal mounting for the arm, so that it can move freely in any direction. In Steenstrup, the work to be welded is automatically, by mechanical means, moved along under the welding head, and the single small guide or track roller adjacent to the electrode is fastened to the welding head, and follows the seam to be welded as the work to be welded is mechanically moved under the welding head. Of course, perfect operation would call for the track roller and the electrode to be maintained at the same point. This is physically impossible, where the track roller runs in the seam to be welded. Steenstrup, confronted with this problem, provided a templet, which would correspond in shape with the work to be welded, and which could be used where a number of articles, identical in shape, were to be welded. In that instance the track roller runs along the templet, which corresponds in shape with the work to be welded, thus controlling the raising and lowering of the welding head with the same accuracy that it would be controlled with a track roller engaging the work at the exact spot where the electrode is located.

It will thus be observed that, not only are the specifications, claims, and devices of the parties entirely different, but the objects sought to be obtained are so widely at variance that there is no reasonable theory upon which to base the claim of Morton to the counts in issue.

The decision of the Commissioner of Patents is reversed.