25 C.C.P.A.(Patents)
### BRAND v. THOMAS.
### Patent Appeals No. 3927.

Court of Customs and Patent Appeals.

April 25, 1938.

C. B. Des Jardins, of Washington, D. C. (George Ramsey, of New York City, and Church & Church, of Washington, D. C., of counsel), for appellant.

H. Frank Wiegand, of New York City (Edwin R. Hutchinson, of Washington, D. C., and William Lang, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The junior party, Samuel Brand, has appealed here from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention in four counts of an interference proceeding to the senior party, Felix Thomas.

The four counts of this interference were copied by Thomas from the Brand patent, No. 1,917,356, issued July 11, 1933, on an application filed September 9, 1929, for a cash register. The Thomas application, serial No. 676,237, is a renewal of an application filed November 22, 1923, for "Accounting Apparatus."

Count 1 is illustrative of the four counts in issue and follows:

"1. In a machine of the class described, capable of transferring a total from any one of *a plurality of a group of totalizers on a common axis to another totalizer on the same axis,* the combination of a plurality of totalizers on a common axis; selecting means for said totalizers; auxiliary selecting means; controlling means to render said auxiliary selecting means

effective; and means to render said controlling means effective." (Italics ours.)

The Brand patent discloses a mechanism by means of which amounts may be automatically transferred from any of a plurality of totalizers located all in one line to another totalizer known as the grand totalizer located on the same line.

The Thomas application discloses certain features relating to improvements in accounting apparatus in which amounts or totals from one accumulator are transferred to another by mechanism which is controlled by manually placed switches or electrical contacts.

The particular invention which is here in controversy relates to only a portion of the structure of each of the parties. It is very definitely stated in the counts and, in view of our conclusion, requires no further detailed explanation at this point.

Prior to the declaration of the interference, the Primary Examiner had ruled that the counts at bar, which were claims of the Brand patent, did not read on the Thomas disclosure. After much Patent Office action involving appeals, this ruling was not adhered to and the interference was declared.

Brand moved to dissolve the interference, asserting, inter alia, that the counts did not read on the Thomas disclosure. There were a number of other grounds for dissolution urged by Brand, most of which are sought to be presented here. Since our decision of the issue of priority turns upon and is controlled by our holding on the above-stated ground for dissolution, it is not necessary for the others to be stated.

Each of the counts in substance calls for, in combination, a group or plurality of totalizers on a common axis. It is the contention of Brand that the totalizers of Thomas are not on a common axis. The Brand specification, however, as is pointed out by the tribunals below, broadens the meaning of the term "on a common axis" to that which would result if the term read "in axial alignment" or as if the totalizers were on the same or substantially the same axial line. The Brand patent discloses that all the totalizers are on a common shaft and necessarily must be in exact alignment.

We think that the tribunals were correct in so interpreting the counts and the only question necessary for us to decide, in view of our conclusion, is whether or not Thomas discloses his totalizers to be in axial alignment.

Appellant has urged, and we think correctly, that under the circumstances of this case the burden was upon Thomas to show that he had clearly disclosed the elements of the counts before he will be permitted to extract from an issued patent the invention at bar. Cooper v. Downing, 45 App.D.C. 345; Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606; Steenstrup v. Morton, 58 App.D.C. 343, 30 F.2d 867.

While it is true that at one time during the prosecution of the Thomas application it was held in the Patent Office that Thomas did not disclose the structure of the counts, there are now before us concurring decisions to the contrary, and, under such circumstances, a highly technical question being involved, the usual rule relating to concurring decisions applies and the decision of the Board of Appeals will not be reversed unless it is manifestly erroneous. On the subject of the Thomas disclosure showing his totalizers as being in axial alignment, the Board, said:

"In the Thomas application as filed, *there is no description of the totalizers as being in axial alignment and no showing which necessarily involves such a relationship. Moreover, it is not essential to the operativeness of the Thomas apparatus that these totalizers be in axial alignment.* Fig. 1b shows three groups of totalizers, the totalizers of each group being in axial alignment and the various groups being apparently in the same relation. The totalizers of each group are driven from a shaft which is common to all groups and the read-out switches are likewise carried by a shaft which is common to all groups of totalizers. [Italics ours]

"Appellant urges that, even if Fig. 1b be construed to disclose the actual arrangement of the parts rather than the diagrammatic relation, the totalizers of the various groups might still be out of alignment. *We agree with appellant that this is true. However, from the showing of Fig. 3 and from the showing of the general assembly in other patents referred to by Thomas, we think it clear that the totalizers are all in alignment.* The totalizer assembly is made up of units which are shown in detail in the Lake patents to which reference is made and *we think it inconceivable that in using a plurality of such units the construction thereof should*

*be made different, especially as it is desirable and shown that the totalizers be all visible through aligned sight openings at the front of the apparatus.* In our opinion the Thomas disclosure fairly satisfies the limitation of the counts that the totalizers be mounted on a common axis." (Italics ours.)

It will be noticed that the Board found that axial alignment of the totalizers was not shown either in the description or the drawings of the Thomas application alone; that in the Thomas structure it was not essential to the operativeness of the machine that the totalizers be in axial alignment; and that Fig. 1*b*, even if considered as not being diagrammatic, does not disclose them as being in alignment. The holding of the board is to the effect that taking into consideration Fig. 3 of the Thomas patent and the general assembly of other patents—Lake patent, No. 1,379,-268, of May 24, 1921, and Lake patent, No. 1,822,594, of September 8, 1931—which had been referred to in the Thomas specification (though not to suggest the particular feature here under consideration), and taking also into consideration the fact that it would be desirable to put the totalizers in alignment so as to make them readily visible through the aligned sight openings, the totalizers of Thomas should be regarded as in alignment.

As we understand the theory of the Board's decision, it approves the views expressed by the Examiner to the effect that the particular structure defined by the claims relating to the axial alignment of the totalizers is old in the art, and that any one skilled in that art who would follow the teachings of the Thomas application could and would construct a machine corresponding to the counts.

Unquestionably it is the law that an applicant for a patent sufficiently discloses his invention if one skilled in the art follows his teachings and produces the device in operative form without the exercise of invention. If in producing the device he makes it operative by adding additional features, old in the art, the addition of which does not amount to invention, it may be said that he has done nothing more than to follow the teachings disclosed. This principle is supported by Cooper v. Downing, supra, and numerous other cases not necessary to cite here.

We are of the opinion that the instant case is not controlled by the above-recited principle. While it may be true that the prior art shows machines in many respects resembling those at bar in which the totalizers were in actual alignment, we do not think that the Thomas specification sufficiently points out this fact to warrant the conclusion that one who attempted to build the Thomas structure, though skilled in the art, would necessarily place the totalizers in axial alignment. The Board has found, and properly so, that it would not be necessary for him to do so, but it is the view of the Board that he would do so.

It must be remembered that the Brand machine is so constructed that the totalizers *must* be in axial alignment and that the invention of the counts rests, it seems to us, in the combination of this feature with the other features which are dependent upon it. That is not true of Thomas. His device is so radically different from that of Brand and operates on such an entirely different principle that it is immaterial whether the totalizers are in axial alignment or not.

The doctrine which Thomas seeks to apply here is one quite similar to the doctrine of inherency. If one discloses a device in a patent application that must inherently do a certain thing, he necessarily discloses that function or that thing, even though he says nothing concerning it. But here is a finding of the Board, unquestioned by the appellee, that there would be no particular reason, unless the inventor was copying certain patents in the prior art, to place the totalizers in alignment.

As before stated, the law is well settled that one who extracts claims from an issued patent must show a clear prior disclosure. We do not think that the Thomas disclosure clearly discloses the axial alignment of the totalizers. Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner. Moreover, as has been said in so many well-considered cases where similar questions were under consideration, the Thomas device is so different from that of Brand, and the invention claimed and the features of his machine as disclosed differ from that of Brand to such a degree that the counts in controversy

would be out of place in the Thomas application. No one writing claims originally in the Thomas application would think of adopting the language of these counts and describing his invention. It is true that this last consideration cannot be the sole test because it is well settled that one who takes out broad claims in a patent will not be permitted to narrow them for the purpose of avoiding an interference. However, we see nothing unusually broad about the counts at bar, certainly nothing sufficiently broad to warrant a holding that they are readable on the Thomas structure. It seems to us that the counts at bar accurately, definitely, and specifically (and without unwarranted broadness) describe the Brand structure.

In Chicago & N. W. Ry. Co. v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053, the Supreme Court of the United States announced the following principle:

"The law does not permit such enlargements of an original specification, which would interfere with other inventors who have entered the field in the mean time, any more than it does in the case of reissues of patents previously granted. Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the mean time, gone into public use."

Numerous cases might be cited where the courts have refused to let the language of claims be stretched and distorted to cover the structure of another application the invention of which was so unrelated to the other as to make the claims when carried into the application read inaptly upon the structure. For instance, in Cleveland Gas Burner & Appliance Co. v. American Heater Corp., 8 Cir., 38 F.2d 760, 763, the court said:

"Furthermore, we are strongly of opinion that claim 5, as taken bodily from the co-pending application, is an interloper in this patent, and finds no suggestion or support in the specification. It is like the cowbird's egg deposited in the nest of another bird. It simply 'does not belong.'"

To this may be added language used by the courts in Dooley Improvements, Inc., v. Motor Improvements, Inc., D. C., 18 F.Supp. 340, and in many other equally sound decisions.

In view of our conclusion that the counts do not read on the Thomas structure, it is unnecessary for us to consider the other grounds of dissolution urged by appellant and the corresponding reasons of appeal to this court. The decision of the Board of Appeals, affirming that of the Examiner of Interferences in awarding priority to the appellee, Thomas, being manifestly wrong, is reversed.

Reversed.