30 C.C.P.A.(Patents)

**BRAMLEY et al. v. BEESE.**

Patent Appeal No. 4666.

Court of Customs and Patent Appeals.
Dec. 26, 1942.

Robert H. Shields, of Washington, D. C. (Albert J. Kramer, of Washington, D. C., of counsel), for appellants.

J. W. Greenbowe, of Bloomfield, N. J. (Towson Price, of Bloomfield, N. J., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellants Bramley and Brewer have here appealed from a decision of the Board of Interference Examiners of the United States Patent Office reversing, in effect, a decision of the Primary Examiner as to the right of appellants to make claims corresponding to the counts in issue, and awarding priority to the junior party, Beese, appellee.

Bramley and Brewer filed their involved application on March 22, 1939, while that of Beese was filed on August 25, 1939.

The interference was declared upon two counts corresponding to claims taken from the Beese application. Count 1 is on the method and count 2 is on the apparatus, both relating to the separation of gases. They read as follows:

"1. The method of separating the heavier and lighter components of a gas, comprising introducing said gas into a chamber formed by plates disposed opposite one another and maintained at different temperatures, rotating said chamber, and drawing the lighter component off from the axial portion and the heavier component off from the peripheral portion of said chamber.

"2. Apparatus for separating the heavier and lighter components of a gas, comprising a chamber, means for maintaining opposite walls of said chamber at different temperatures, means for rotating said chamber, and means for drawing the lighter component off from the axial portion,

and the heavier component off from the peripheral portion, of said chamber."

The invention involved seems to be well described in appellants' brief as follows: "The subject matter of this interference relates to the separation of mixed gases having different molecular weights or of a single gas having a heavier component and a lighter component. Such components of a single gas are generally referred to as isotopes. The method of accomplishing such separation in accordance with the counts is similar in one respect to that of the ordinary cream separator, by making use of centrifugal action. In addition to centrifugal action one side of the separator is maintained at a temperature different from the other. As a result of this temperature difference and centrifugal action a thermal diffusion of the gas components is obtained, together with a movement of these components toward different regions. * * *"

The preliminary statement of Beese alleged no date to which he was entitled earlier than the filing date of Bramley and Brewer, and Beese was accordingly ordered to show cause why judgment on the record should not be entered against him. Beese then moved to dissolve the interference on the following grounds:

"(1) The disclosure of the party Bramley and Brewer is too indefinite to support either of the counts.

"(2) The disclosure of Bramley and Brewer is inoperative insofar as it relates to the counts of the interference, so they have no right to make either count.

"(3) The substance of the sentences added to the Bramley and Brewer specification after the paragraph describing Figure 3 on page 5 is new matter."

The Primary Examiner held that the Bramley and Brewer disclosure was sufficient to support the counts and therefore denied the motion of appellee to dissolve the interference. He discussed the questions involved at considerable length. His rulings and reasons therefor will be discussed in more detail later.

Upon final hearing before the Board of Interference Examiners, the board held, for reasons which will be more fully discussed hereinafter, that the Bramley and Brewer disclosure was not sufficient to support the counts and awarded priority to the party Beese.

Before discussing the issues involved, we think it will be helpful to set out here Fig. 3 of the Bramley and Brewer application and Fig. 1 of the Beese application; the latter is inserted by reason of the fact that Beese contends that the counts should be interpreted in the light of his application and his disclosure:

BEESE

*Fig. 1.*

BRAMLEY & BREWER

The Bramley and Brewer application, as originally filed, explained their drawing (Fig. 3) in the following language: "The apparatus illustrated in Figure 3 is so designed that all gas motion is imparted by centrifugal force. The apparatus consists of a heated plate 1, which stands parallel to cold plate 2. The space between the hot plate 1 and cold plate 2 is enclosed by thermal insulators 3."

The Primary Examiner rejected all the claims, 1 to 5, inclusive, of the Bramley and Brewer application as filed, upon the ground, among others, that they were indefinite. Appellants then cancelled claims 1 to 4, inclusive, amended claim 5, submitted one new claim, 6, and also amended their specification. One of the amendments to the specification reads as follows: "In this type of apparatus, heated plate 1, cold plate 2, and insulators 3 are supported in such a position that the whole apparatus revolves on a spindle which contains tube 4 and outlet tube 6. Outlet tube 5 is situated at the periphery of the apparatus."

Beese argues that this amendment comprises new matter, but in view of our conclusion it will not be necessary for us to decide that question.

Amended claim 5 and new claim 6 were subsequently rejected upon the prior art. Some time later, appellants submitted two claims identical with claims 1 and 6 of the Beese application and corresponding to the counts in issue, the claims apparently having been suggested to them for the purpose of interference. Thereupon the present interference was declared.

In his motion to dissolve, Beese, after quoting from appellants' application (as originally filed) the above-quoted description relating to Fig. 3, argued that:

"This is all there was about the *only* figure apparently *supposed* to show how gases are separated by means of centrifugal force, except for the *brief* description of this figure reading as follows:

" 'Figure 3 is a cross-sectional view of a type of apparatus that may be used in which mass motion is imparted to the gas within the apparatus by means of centrifugal force.'

    \*    \*    \*    \*    \*    \*

"From this meager description it is not at all clear how any possible use could be made of the apparatus. However, if we give Bramley and Brewer the benefit of their description of Figures 1 and 2, we might assume that the lower plate 1 is heated, like the plates 1 of Figures 1 and 2, and the upper plate 2 is cooled, like plates 2 of Figures 1 and 2. However, even on this assumption, we do not yet have a definite and operative disclosure, because there is no showing, either *about what axis* the chamber or double-chambered device *rotates, what causes* it to rotate, or *what shape* it is in *plan.*" [Italics quoted.]

He then contended that the added words describing Figure 3 constituted new matter and continued: "A consideration of Figure 3, shows that gas apparently passes entirely through a *hollow tube* from top to bottom, which tube apparently encloses portions of the pipes marked '4' and '6.' *If* this is a spindle, there is no disclosure of *'why* gas should circulate therethrough, and how gas is admitted to the pipe 4, and withdrawn from the pipe 6, if they are rotated with said spindle." [Italics quoted.]

He concluded by stating:

"Looking at the disclosure of Figure 3 of Bramley and Brewer in its *most favorable* light (but without going to the disclosure of *Beese* for amplification or explanation), it is seen that it is *inoperative,* first, because the application of heat below and cold above would so stir *up* any gas therein, that *no possible separation could be effected;* second, gas apparently passes directly through the *whole length* of the two chambers, from right to left, which would cause a further *stirring up* of the gas; third, there is no disclosure of the *shape* of the chamber or chambers, as viewed from *above;* fourth, there is no disclosure of *how* gas or air is introduced to or withdrawn from the chamber or chambers; and fifth, there is no disclosure of how the chamber (or chambers) is (or are) mounted and rotated.

"In view of the foregoing discussion, it is clear that there is no support for the counts, and particularly the method steps of count 1, such as introducing gas into a chamber, *rotating* said chamber, and *drawing* the lighter component from the axial portion, and the heavier component from the peripheral portion of the chamber.

"As for count 2, it is clear that there is no apparatus disclosed for *separating* the heavier and lighter components of a gas, comprising *means* for *maintaining* opposite walls of a chamber at *different* temperatures, *means* for *rotating* the chamber, and

*means* for *drawing* the lighter component from the axial portion, and the heavier component from the peripheral portion.

"Even if Figure 3 can be assumed to show a chamber in which the wall 1 is hot, and the wall 2 is cold, there is no disclosure of *means for maintaining such walls at different temperatures."* [Italics quoted.]

We have set out at some length the above argument of Beese, made upon the motion to dissolve, for the reason that we think it, when considered with the drawings, supra, presents clearly the fatal defects of appellants' disclosure which prompted the board to award priority to Beese.

The Primary Examiner ruled, in substance, that in Fig. 3 pipes 4 and 6 are enclosed in a hollow shaft and that "the same reference characters as used on the different embodiments designate corresponding parts and conditions." He further said: "* * * The intake pipe 4 communicating with but one side of the structure in Fig. 3 makes it evident that the chamber must be annular. The arrows indicating the circulation of gases and the position of the lighter K and heavier I constituents show that tubes 5 and 6 must be at the axis of rotation. The only apparent utility for the enclosing shaft is to produce rotation of the body. It therefore is held that the Bramley and Brewer application discloses a chamber formed between spaced, parallel plates 1, 2 and that said plates are mounted for rotation upon the shaft enclosing tubes 4, 6."

As to the means for rotating the device, the examiner, we think, improperly held that: "The mere suggestion that the plates are rotated responds to the broad 'means for rotating.'"

These holdings were contested before the Board of Interference Examiners, and it held in part as follows:

"In essence, the question to be decided is whether or not Figure 3 of the Bramley and Brewer application, taken with the verbal description, satisfies the requirement of R.S. § 4888, 35 U.S.C.A. § 33, as to sufficiency of disclosure.

"Inspection of Figure 3 reveals that it is extremely diagrammatic. From the character of this showing it is a matter of conjecture as to the specific structure and operation intended to be represented thereby. Standing alone, in the absence of legends, it obviously is impossible to read method count 1 on this figure. As for apparatus count 2, this also is not readable on Figure 3. There indubitably is no showing, diagrammatic or otherwise, or [of] 'means for maintaining opposite walls * * * at different temperatures,' or of 'means for rotating said chamber.'

* * * * * *

"The argument of Bramley and Brewer that such means are 'conventional' has been considered but is not deemed applicable herein. In view of the nature of the subject matter in controversy, it appears doubtful if there could be 'conventional' means; in any event there is nothing in the record supporting the asserted 'conventional' character of such means.

"Apropos the matter of rotating the device shown in Figure 3 to effect motion of the gas through 'centrifugal force,' the question also arises how, under such conditions of rapid motion, it would be possible for the pipes 5, 5 to be connected to means for 'drawing off the heavy gas.' The sketch, it should be noted, shows pipes 5 as broken, thereby indicating that they extend to the receiver for the heavier component.

"A diagrammatic sketch of this character, which admittedly must be supplemented by 'conventional' details to make it complete and operative, is not deemed a disclosure of the precise invention for which a patent is sought and the preferred embodiment thereof. Certainly this meager showing and somewhat cryptic description falls far short of the full, clear, concise and exact disclosure required by R. S. § 4888, and therefore does not adequately support apparatus count 2.

"While there is a somewhat more colorable basis for the method count, nevertheless there is, actually, the same fatal defect with respect to the disclosure. The method count, by its very terms, could only be performed in the apparatus described in count 2. Lacking a satisfactory disclosure of means for performing the process, applicants Bramley and Brewer likewise fail to meet the statutory requirement as to sufficiency of disclosure of the method."

■ The question of inoperativeness of the Beese structure was not raised before the board, and appellants have not raised it in their reasons of appeal. Nevertheless, they ask us to consider it inasmuch as they did not discover that the Beese disclosure was inoperative until they were preparing their brief for appeal here. It is too well

settled to require the citation of any authority that questions not raised before the tribunals below and not covered by the reasons of appeal are not before this court for review, and we therefore will give no consideration to this question.

We agree with the Board of Interference Examiners that appellants' diagrammatic drawing with the meager description of the same, even after amendment to the description in the particulars heretofore mentioned, is not a sufficient showing to support the counts involved. Section 4888 of the Revised Statutes, 35 U.S.C. § 33, 35 U.S.C.A. § 33, requires that: "Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

The burden of appellants' argument as to why their diagrammatic drawing and incomplete description are sufficient to support the involved counts is to the effect that it is enough to acquaint one skilled in the art how to construct and use the device and that it is not necessary to go into detail and show all the elements, such as "means for rotating said chamber." The difficulty with that position is that in this kind of proceeding specific limitations in a count cannot be ignored, and some disclosure that satisfactorily teaches the art the manner or preferred manner in which the structure may be made and used must be furnished. Where there is no means shown, the disclosure is deficient. There is nothing in appellants' application to satisfactorily teach one skilled in the art the manner in which they make or use their structure. In this case, we are in much the same position as we were in Brand v. Thomas, 96 F.2d 301, 303, 25 C.C.P.A., Patents, 1053, where it was held that the appellee had no right to make the count and we said: " * * * Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner. * * * " [Italics quoted.]

Appellants have assigned as a reason of appeal the failure of the Board of Interference Examiners to take into account all the figures of the drawings contained in their application. It is not contended that the counts read upon any figure other than Fig. 3. It is true that they argue that since the same numerals are used in all their drawings, some of the means called for by the counts may be explained by reference to the other figures. Nevertheless, even upon taking into account all the figures of the drawings and the specification as a whole, we, after careful consideration, are not convinced that appellants' application is sufficiently "full, clear, concise, and exact" in its terms as to comply with the statutory requirement.

We are especially impressed with the merit of appellee's contention that there is no showing in the application of Bramley and Brewer as to the cause or manner of rotation of the chamber, or the shape of the chamber, or how the heavier component of the gas is drawn off. It seems to us that the Board of Interference Examiners was correct in holding that the mere mention of centrifugal force does not supply the requirement of count 2, which calls for "means for rotating said chamber."

In view of our conclusions as to these matters, it is unnecessary for us to discuss the numerous other questions raised by both parties.

The decision of the Board of Interference Examiners is affirmed.

Affirmed.