48 CCPA

### Application of Carl W. WALTER.
### Patent Appeal No. 6662.

United States Court of Customs
and Patent Appeals.
July 14, 1961.

Worley, C. J., and Martin, J., dissented.

Irving U. Townsend, Jr., Boston, Mass., Dos T. Hatfield, Washington, D. C. (Emery, Booth, Miller & Townsend and Robert A. Townsend, Boston, Mass., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claim 21 of Walter application Ser. No. 487,728, filed February 14, 1955, for "Fluid Administering Equipment."[1]

Claim 21 was copied, for interference purposes, from Ryan patent 2,704,544, issued March 22, 1955, assigned to Abbott Laboratories, entitled "Venoclysis Equipment."

Applicant's specification states at the outset,

"This invention concerns the supplying and administering of fluids including particularly whole blood and fractions thereon subcutaneously, including parenteral, intravenous, arterial and other infusions."

Ryan's venoclysis equipment (venoclysis being injection into a vein) is used for the identical purposes.

Appealed claim 21 is claim 1 of the Ryan patent. It relates only to one element of the apparatus, a "filter cell" which is interposed in a line of flexible tubing extending from a reservoir, containing the fluid to be administered, to the hypodermic needle. In spite of the broad title of Ryan's patent, what it discloses is merely several species of filter cells *to be* attached to reservoirs and a length of flexible tubing *to be* attached to a needle. Walter, the appellant, discloses a complete venoclysis set including reservoir, filter cell, flexible tubing lines and needle, including temporary sterile seals.

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. The application on appeal is a continuation-in-part of Ser. No. 174,891, filed July 20, 1950, now patent No. 2,702,034, entitled "Apparatus for Collecting, Storing, and Dispensing Whole Blood," assigned to Fenwal Incorporated, Ashland, Mass.

Walter copied claim 1 of the Ryan patent and contends that it is supported by the disclosure of his application. He urges that he should have the right to contest priority of invention with Ryan as to the subject matter of this claim. No references have been cited against the claim, the sole ground of rejection being that Walter cannot make it for want of supporting disclosure in his application. That is the only issue before us.[2]

We copy below the claim in issue as it appears in appellant's brief, the elements of the combination which is the filter cell being italicized and the limitation by reason of which the Patent Office contends Walter's specification does not support the claim being in capital letters. The Patent Office admits that there is supporting disclosure for everything in this claim except the capitalized clause. We have also broken the claim up into its parts and added numbers to the elements.

"A filter cell for venoclysis apparatus, comprising in combination:

"[1] a deformable, cylindrical, *hollow body* CAPABLE OF BEING PARTIALLY COLLAPSED WHEN EXTERNAL PRESSURE IS APPLIED THERETO TO EFFECT A SUBSTANTIAL CHANGE IN THE VOLUME OF THE SAID HOLLOW BODY AND RETURNING TO ITS ORIGINAL FORM WHEN THE PRESSURE IS RELEASED;

"[2] a *filter element* in said body;

"[3] *end closure means* at each end of said body having a passage therethrough;

"[4] a *tubular inlet means* communicating with the interior of said body secured to and projecting from one of the said closure means for communication with a source of liquid;

"[5] and *tubular delivery means* communicating with the interior of said body secured to and projecting from the other of the said closure means for discharging liquid from the said body;

"said body when compressed after stopping the flow of fluid in the tubular delivery means effecting a back-flow through the said tubular inlet means, thereby facilitating dislodging obstructions in the said tubular inlet means."

This filter cell is really of the utmost simplicity. It is nothing but a piece of tubing about the size of a man's finger with a plug in each end, a filter somewhere inside, and inlet and delivery tubes connected to openings in the end plugs. It is not disputed that Walter discloses such a filter cell. The only question is whether he discloses a cell wherein the tubing from which the "hollow body" is made gives him a body which meets the limitations set forth in capital letters. This issue too is such a simple question it is difficult to see how so much ink has been spilt over it.

Taking the simplest possible, and may we say obvious, view of the capitalized limitation on element [1], it appears

2. This opinion, dealing as it does with this one simple issue, will scarcely convey the confusing complexity of this case which has a 333-page printed record containing 5 opinions of the board and an intervening Commissioner's Decision. In its 34-page fourth opinion the board finally summed up all of its views. Other claims were there involved which appellant has abandoned (withdrawn). It also appears that the same issue we have here was fought out and lost on a previous occasion in connection with a reissue of the parent application and it would seem that there is pending before this court another appeal, No. 6407, on that decision which is now under suspension by agreement of the parties, pending the outcome of this appeal. There is no point, however, in further troubling the reader, as we have had to trouble ourselves, with further details on this score. We are not hampered in our thinking, as the board and the appellant appear to have been, by having given any previous consideration to the single issue before us.

on its face to call for a chamber body made of tubing which is both flexible and elastic so that when one pinches it, it is "partially collapsed" and when the pincher lets go it returns "to its original form." Taking this view is no more than the Patent Office asks us to do. It does not contend that the clause means anything other than what appears on its face or that it must be construed in any obscure way. Whether Walter discloses a filter body which is flexible and elastic obviously depends on what his disclosed body is made of and so we turn to Walter's specification to see what it discloses in this regard.

It will, perhaps, assist in understanding our consideration of the relevant disclosure of Walter to have a word picture of the apparatus he discloses. It will give meaning to the necessary reference in quotations to numbers on the drawing. In Fig. 1 appellant shows a "recipient set B" which comprises the filter cell 42, here in question, connected at opposite ends to three or four foot lengths of flexible tubing 40 and 45, each tube having a hollow needle attached to its end. In Figs. 4 and 5 this recipient set is shown in use with one of the needles inserted in the arm of a patient (the recipient) and the other inserted into a "flexible-walled deformable bag or bladder" 10, containing the fluid to be administered. The flexible bag is hanging from a hook above the patient with the recipient set attached to its lower end so that it is also suspended above the patient, under which conditions the blood or other fluid is fed into the patient's arm by gravity, from the bag, through one needle and tube to the filter cell 42, through the cell (in which flow can be observed because it doubles as a "drip chamber"), and through the other tube and needle into the patient. Extending from the top of the bag 10 is a short length of "inlet" tubing 13 which is shown to be tied in a knot 13b.[3]

The part disclosed by Walter which he says meets the claim he calls "the filter and drip observation means 42," or the "plural-chamber means or element 42," or the "plural element or tubular means 42," or just "plural means 42." Except for the kind and shape of the filter, which is irrelevant here, Walter's drawings show filter cells very similar in appearance to Ryan's cells, as shown in his drawings. Walter says [all following emphasis in the opinion is ours]:

"Such filter and drip means 42 of the recipient set B as illustrated by way of example is constructed of a suitable length or lengths of tubing *of the plastic described,* having a diameter substantially greater than that of the conductor tubing 40, 45, desirably at least 12 mm. or more and for example 0.5 mm. wall thickness."

The specification also states that the two lengths of plastic tubing 40, 45 are "made of *the stated plastic material,*" going on to say that the tubing has an orifice or "lumen" of 3 mm. and a wall thickness of 0.5 mm. and that "It is heat sealable and is sufficiently *elastic* to afford and maintain a hermetic seal if a single throwknot[4] in it, such as indicated at 13b, is pulled up tightly under *stretching* and then released." The specification states that the plastic bag 10 is fashioned "of *the flexible* sheet material."

All of the foregoing statements about the material of which the bag, tubing, and filter cell body are made are references back to the *same* disclosure of the "*elastomeric* thermoplastic resin selected

---

3. The parent case, Patent 2,702,034, explains the use of the knot. After the bag 10 has been filled with blood or the like, "The tubing 13 * * * is then sealed off at a point close to the bag, as by clamping, fusing *or tying as by drawing tight the knot 13b*, and this tubing is then severed at the side of the seal-off point away from the bag * * *." [Emphasis ours.]

4. As shown in the drawings, this "throwknot" is an overhand knot as Webster's dictionary defines knots.

for characteristics [5] especially adapting it to the purposes of the invention." It is stated that "The container or containers 10 and the tubing *and chamber members* of the recipient set" are fabricated *of this elastomeric resin*. The only "chamber" member in the specification is the filter cell 42.

The *disclosure of suitable resins to* which all of these references are made states:

"Preferably the material is transparent or substantially so to facilitate use of the apparatus. Equipment fabricated of a polyvinyl chloride base material as for example a polyvinyl chloride acetate copolymer, such for instance as is manufactured by the *Irvington Varnish Co.,* Irvington, New Jersey and further identified by their *Specification No. 6384, has been found to meet all the requirements*. Other materials which have been found suitable include a polymer of trichlorofluoroethylene such as known commercially as Kel F; also a polyethylene composition * * *. It is understood that the component material presenting the described properties and characteristics *for the elements of the apparatus* here concerned whether of the polyvinyl chloride class or otherwise, are appropriately *plasticized* for the fabrication thereof."

While we believe that this is enough in itself to teach anyone skilled in this art to use for the filter cell body a plasticized elastomeric resin,[6] which in our opinion would meet the italicized limitation of the claim at bar, it is not necessary to look for technical proofs as to what the physical characteristics of these materials are because the Walter specification tells us in clear terms what they are. It tells us that the bags which are made *of that material* in the form of "12.5 cm. laid-flat tubing of 0.25 mm. wall gauge" are made of *"flexible* sheet material" producing bags with a "thin *flexible* wall" which "enables it to be completely collapsed flatwise before filling." The tubing made *of that material* (3 mm. lumen, 0.5 mm. wall) is *"flexible and elastic."* In fact it can be *tied in a knot,* as stated above, tightened by *stretching* and release.

We think it is clear that Walter discloses a filter cell having a *flexible and elastic* wall when that wall, which is a tube 12 mm. in diameter with a wall 0.5 mm. thick, has the *same* wall thickness as the *flexible and elastic* 3 mm. tubing and has twice the wall thickness of the bags which are so flexible they can be completely collapsed flatwise. Obviously the 0.5 mm. wall would reduce flexibility as compared to a 0.25 mm. wall but that would only increase its resilience in the direction of that of the 3 mm. tubing.

With respect to the 3 mm. tubing with the 0.5 mm. wall thickness, the same wall thickness as that of the filter cell body, the specification, in describing the various uses of the apparatus, says:

"In any use instance the observed *flow may be regulated by pinching the tubing* between the container and the tubular enlargement 42 [the filter cell]."

The Patent Office has consistently admitted that the tubing from which the container 10 (of 12.5 cm. diameter) is

---

5. Footnote ours. The specification states, as to these characteristics:
   "These primarily include impermeability, tensile and *flexural strength* and also impact strength and general toughness, plus stability to sterilizing temperatures of at least 120° C., coupled with capacity for hermetic sealing by heat."

6. Hackh's Chemical Dictionary, 3d Ed. (1950), defines "elastomer" thus: "A generic term (proposed by Fisher) for all substances having the properties of natural, reclaimed, vulcanised or synthetic rubber." Under "synthetic elastomer" is included "Rubber substitutes. Five classes, produced by: * * * (e) polymerisation and plasticisation of vinyl chloride (e. g. Koroseal)."
   Webster's New Collegiate Dictionary (1956) defines "elastomer" as "An elastic, rubberlike substance, as natural or synthetic rubber."

made and the 3 mm. connecting tubing are *expressly* described as both flexible and elastic and at the oral argument the solicitor said there was no question in his mind that if Walter "had described his drip chamber 42 *in the same language* that he has described his bag 10 and the small tubular elements, there would be no question in this case."

In his brief the solicitor thus characterizes Walter's position as to the adequacy of his disclosure:

"Accordingly, appellant rests his argument for express disclosure, of the claim limitations [,] upon the disclosure 'of a flexible and *elasomeric* filter chamber tubing' urging that the properties of the smaller should be attributed to the larger tubing."

He then argues:

"To 'attribute' properties to chamber 42 in order to permit appellant to copy a claim from another's patent is not supportable in the law."

It is clear to us from reading Walter's specification that he makes his container 10, tubing 40, 45, and filter cell body out of the *same material* and it seems to us to follow, as night follows day and with no less certainty, that if the other parts are flexible and elastic, as the Patent Office admits, the filter cell body is too. And it is further admitted by the Patent Office that if the filter cell body is disclosed as flexible and elastic, then the sole limitation of the claim on which the Patent Office relies finds support in the disclosure. That being the case, the rejection is without foundation.

We know of no law which stands in the way of construing the Walter disclosure as though it said in express words that the filter cell wall is flexible and elastic. Its normal meaning clearly gives even the lay reader that information. We could cite further reasons in support of our conclusion including an admission by the board that a cell made of the Irvington Varnish Company's material No. 6384, specifically referred to in the specification, meets the claim, but it seems unnecessary to do so, so clear does the more general teaching of the specification appear to be.

The board, sua sponte, raised a new ground of rejection based on res judicata. The Patent Office Solicitor, in his brief, points out that the board predicated this rejection on a mistaken assumption and says "it is believed that the Court may disregard this rejection." It is unnecessary, under these circumstances, to consider it.

The decision of the board is reversed.

Reversed.

WORLEY, Chief Judge, with whom MARTIN, Judge, joins (dissenting).

It is clear that appellant's application contains no express disclosure of the limitation in the appealed claim that the body of the filter cell is capable of being partially collapsed and returning to its original form when the pressure is released. Accordingly, if appellant is entitled to make the claim it must be because the property recited in that limitation is inherent in what he does disclose. Inherency in this connection means that "the necessary and only reasonable construction to be given the disclosure by one skilled in the art is one which will lend clear support" to the limitation in question. Binstead et al. v. Littmann et al., 242 F.2d 766, 770, 44 CCPA 839; Brand v. Thomas, 96 F.2d 301, 25 CCPA 1053; Hansgirg v. Kemmer, 102 F.2d 212, 26 CCPA 937; Thompson v. Dicke, 110 F.2d 98, 27 CCPA 931; and Temple v. Littlehale, 125 F.2d 730, 29 CCPA 869. It seems the majority views completely disregard the very solid law laid down in those precedents. As stated in those decisions, the mere fact that one following an applicant's disclosure *might* produce something satisfying the count is not sufficient. Such a possibility is all that is present here since there is clearly no showing that *all* or even *most* of the filter chambers coming within appellant's disclosure will have the claimed property of collapsing and returning. In Brand v. Thomas, the court said [96 F.2d 303]

"* * * Lack of clear disclosure is not supplied by a speculation as to what one skilled in the art might do or might not do if he followed the teaching of the inventor. The disclosure should be clearer than to suggest that one skilled in the art *might* construct the device in a particular manner." (Italics quoted.)

The doctrine of the cited cases is not avoided by the fact that one of a number of specific examples given in the application happens to be so proportioned that it can be shown to possess the property claimed, where that property was not recognized or disclosed. Thus in Thompson v. Dicke, it was held that an applicant could not make a claim, even if it read directly on an illustrated embodiment, where there was nothing to indicate that the proportions of that embodiment were important or essential. Also, as stated in the brief for the Commissioner

"Further, as pointed out by this Court—in re Betz 35 CCPA 1033, 166 F2d 831—the mere possible inherency of function in a structure without unequivocal disclosure of the function or teaching that the structure must of necessity perform the function, does not give an applicant the right to claim such function. Or stated in another way consciousness of the critical concept and main guiding factor upon which the patent depends and a clear teaching thereof on the part of the applicant is a minimum consideration for finding supporting disclosure. Giambalvo v. Detrick, 35 CCPA 1112, 16 [168] F 2d 115 [116]. * * *"

So far as the instant record goes, appellant did not appreciate the advantage of making the filter chamber collapsible and returnable, and did not realize that some chambers made according to his specification might possess that property until he saw Ryan's patent. If Ryan had not entered the field the public would not have been taught the desirability of that property. Under such circumstances it is difficult to understand the theory on which appellant can properly be granted a claim based on that property. See In re Rossi, 241 F.2d 726, 44 CCPA 750, and cases there cited.

It is well settled law that an applicant who copies a claim from a patent has the burden of showing a clear basis for it in his disclosure. Crome v. Morrogh, 239 F.2d 390, 44 CCPA 704, and cases cited. In my opinion no such showing has been made in the instant case. The decision of the board should be affirmed.