## In re DRAEGER et al.

### Patent Appeals No. 5041.

Court of Customs and Patent Appeals.
June 25, 1945.

W. E. Currie and P. L. Young, both of New York City, and W. F. Weigester, of Washington, D. C. (J. Cashman, of New York City, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

From a decision by the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 22 to 31, inclusive, of appellants' application for a patent, on the ground that the claims are not supported by appellants' application, appeal has been taken here.

Appellants' application relates to a method for continuously reacting saturated tertiary hydrocarbons and olefins. Claims 22 to 26, inclusive, were copied from the patent to Altshuler et al., No. 2,238,802, issued April 15, 1941. Claims 27 to 31, inclusive, correspond to claims 22 to 26, respectively, except for slight differences which are clearly immaterial and which were so regarded by the tribunals below and not claimed otherwise by the appellants. The allowance of the instant claims is sought for the purpose of provoking an interference with the said Altshuler et al. patent.

Claim 22 is regarded as illustrative of the appealed subject matter and reads: "22. In a process of alkylation in which olefinic and isoparaffinic hydrocarbons are reacted in the presence of a condensation catalyst while flowing in a circuit comprising a reaction zone into which reaction zone the iso-paraffinic and olefinic hydrocarbons are introduced in a feed in which the molar quantity of the iso-paraffinic hydrocarbon is greater than the molar quantity of the olefinic hydrocarbon, the improvement which comprises increasing the molar ratio of the iso-paraffinic hydrocarbon to the olefinic hydrocarbon in the reaction zone in excess of one hundred to one by increasing the rate of flow of the materials in the circuit such that they traverse said circuit in less than 70 seconds."

It will be observed from the claim and from portions of the examiner's statement quoted infra that the instant subject matter is highly technical, involving the chem-

istry of the elaborate process as well as the structure of the alkylation machinery with which the process is carried out.

The examiner has, we think, properly described the Altshuler et al. patent in the following manner:

"Both the present application and the patent to Altshuler et al relate to the alkylation of isoparaffins such as isobutane by means of olefins such as butene in the presence of an alkylation catalyst such as concentrated sulfuric acid.

"According to Altshuler et al, their process is conducted in such a way that they obtain in their reaction zone an isoparaffin to olefin ratio, in effect, in excess of 100 to 1 by the expedient of controlling the rate of circulation of the mixture of hydrocarbons and acid catalyst within their reaction zone. When the feed contains an increased amount of isoparaffinic hydrocarbon, they may reduce the circulation rate and when the amount of isoparaffinic hydrocarbon is reduced, the rate of circulation may be increased. They have found that they obtained certain desirable results by maintaining the rate of flow in the closed circuit within the reaction zone so that the reactants will traverse the circuit once in 45 seconds or in less than 70 seconds.

\*   \*   \*   \*   \*   \*

"As the examiner understands the Altshuler et al patent, by means of the foregoing apparatus and mode of operation the patentees are enabled to get an effect of very high ratios of isoparaffin to olefin within the reaction zone. This is due to the fact that the feed to the reaction zone contains an excess of isoparaffin over olefin and since the reaction between isoparaffin and olefin is on a mol for mol basis, there is a large amount of accumulated unreacted isoparaffin passing the point of introduction of olefin feed at any one moment and the amount of isoparaffin passing such point is dependent upon the rate of circulation which in the patented claims is given in the time in seconds it takes to complete the circuit in the reaction zone."

Then, referring to appellants' disclosure, he, by commenting upon the drawings and the specification, points out the following:

"\* \* \* Applicants practice one other control and that is the regulation of the length and/or the velocity of the stream so as to provide a contact time under reaction conditions of from about 30 minutes to 2 hours."

He then calls attention to the fact that some of the appealed claims call for a rate of flow of the materials in the circuit, as for instance in claim 1, in less than 70 seconds, while in other claims the limit is 45 seconds.

In holding that the appealed claims were not supported by appellants' disclosure and in denying the requested interference, the examiner in part said (omitting immaterial numerals, dates, etc.):

"As has been pointed out in the foregoing, applicants disclose \* \* \* ratios of recycle stock to fresh feed in excess of about 15:1 and preferably between 35:1 and 65 to 1, \* \* \* overall ratio of acid to hydrocarbons in the circulating system of between 1:3 and 3:1, and \* \* \* the regulation of the length and/or the velocity of the stream so as to provide a contact time under reaction conditions of from about thirty minutes to one hundred and twenty minutes.

"A careful study of the original disclosure does not show any instruction by applicants of any manner in which the three different variables are to be correlated with each other. There is no instruction that the lower limit of any one variable or the lower limit of the preferred range of any one variable be used with the lower limits of the other variable or with the lower limit of the second and the upper limit of the third variable or that the lower limit of one be used with some intermediate value of the other variables. The charts or curves presented with the amendment \* \* \* appear to show \* \* \* a very minor portion of the possible correlations may satisfy the terms of the claims (with no support shown for the particular correlations). One chart shows that substantially only for a correlation of 30 minutes contact time, 1:3 acid to hydrocarbons ratio, and ratios between 35 and 65 of recycle stock to fresh feed will the terms of the claims be met. The second chart shows that only the specific correlation (not disclosed originally) of 30 to 60 minutes contact time, 1 to 3 acid to hydrocarbon ratio, and 65:1 recycle ratio will substantially meet the claims.

"The calculations presented \* \* \* are on the basis of a 30 minute contact time, 65:1 recycle ratio, and acid to hydrocarbon ratio of 1:3. This gives a traverse time of 36.9 seconds. Why this particular correlation? The examiner feels justified, for example, to consider the contact ·

time 120 minutes. This gives a time of 147 seconds which is way above 'less than 70 seconds' or 'less than 45 seconds'."

The question presented to the Patent Office tribunals and here is: the appellants having disclosed a rate of flow resulting in a traverse time of between 36.9 seconds and 147 seconds (assumed but not determined by us), are they entitled now to have claims limiting the traverse time to less than 70 seconds and less than 45 seconds, respectively?

It is the contention of appellants that the said traverse time claimed, though not specifically mentioned by them in the application, is inherent in the process disclosed therein. In so contending, they set out in their brief a much-involved mathematical formula, which would not be helpful to reproduce here, from which they argue that an inherent traverse time of 36.9 seconds is indicated. The Patent Office tribunals, assuming that the formula was accurate, nevertheless held that a disclosure of a traverse time range, claimed to be inherent, from 36.9 seconds to 147 seconds was not a proper disclosure to form the basis of the claims at bar, limited as they are to less than 70 seconds and less than 45 seconds, respectively.

The Solicitor for the Patent Office, taking the appellants' formula and using the maximum contact time of 120 minutes and substituting certain other variables taken from appellants' disclosure so as to give the maximum traverse time, obtained a result of 822.8 seconds. He then states in his brief: "The situation is thus presented that the application discloses as suitable a range of values which will result in traverse times varying from 36.9 seconds to 822.8 seconds and, on the basis of this disclosure, the appellants desire to claim as their invention the use of a traverse time of less than 45 or less than seventy seconds. It will be seen that the permissible traverse times of the application cover a range of 785.9 seconds (from 36.9 to 822.8) and that of this range only 33.1 seconds (from 36.9 to 70) satisfies the requirements of any of the appealed claims. This means that less than one twenty-third of the range which the application gives as suitable will satisfy the requirements of any of the claims."

In view of our conclusion as to the controlling question of law involved, it is not necessary for us to determine whether or not the solicitor's figure representing maximum traverse time is correct. This matter is in some doubt, and we think the result is the same whichever maximum traverse time is accepted.

The rule that limitations in claims copied from a patent for interference purposes cannot be considered as immaterial is settled law. In re Creveling, 61 F.2d 862, 20 C.C.P.A., Patents, 701; In re Replogle, 70 F.2d 375, 21 C.C.P.A., Patents, 1068. We find, agreeably to the holding of the tribunals below, that there is no definite teaching in appellants' application as filed of the desirability of keeping the traverse time below the limits stated in the claims. Obviously the limits of 70 seconds and of 45 seconds must be regarded as material and critical. The mere fact that by manipulation of appellants' alkylation system it may be *possible* to limit the rate of flow in accordance with the limitations of the claims is not sufficient. Inherency does not mean that a thing might be done, or that it might happen, as in the instant case, one out of twenty odd times; but it must be disclosed, if inherency is claimed, that the thing will necessarily happen. Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A., Patents, 1053; Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937; Schweyer v. Thomas, 68 F.2d 957, 21 C.C.P.A., Patents, 871. The mere fact that appellants' broad range overlaps at one end does not make it a disclosure of the critical limitations in the appealed claims. Appellants' application as filed fails to teach the gist of the invention here involved, and they should not now be permitted, on said disclosure, to extract from an issued patent, claims obviously based upon the disclosure of a critical element not even hinted at in their specification. To hold otherwise would encourage rather than discourage indefinite, broad disclosures and thus prevent inventions relating to critical matters, as does the one involved here, from being taught to the public.

Appellants have based their argument almost exclusively upon the proposition that the principle laid down in Wemple et al. v. Peirce et al., 75 F.2d 998, 22 C.C.P.A., Patents, 1064, is controlling of decision here and should have been followed by the Patent Office tribunals. They state in their brief that "* * * This dispute really narrows down, therefore, as to whether or not the Patent Office was right or wrong in failing to follow the precedent set by the Wemple et al case."

In that case, it is noted that this court quoted the following from the decision of the Board of Appeals: "The ranges recited in the counts cover substantial parts of the ranges disclosed in the two applications. * * *" The court then stated that "No contention is made respecting the correctness of the foregoing finding."

The situation in that case is not the one presented here. There the inventions of the parties were substantially the same, as was disclosed by the similarity of the ranges of both parties. That case should not be regarded as holding that in every case where a broad range given in an application overlaps that of a claim at some point, it will always form a sufficient basis for the right of making the claim. In the instant case, as has been pointed out, the ranges in the appealed claims are so different from the ranges disclosed by appellants that it is obvious that the inventions are different.

Appellants have made other contentions in their main and reply briefs which go to the question of the alleged misunderstanding on the part of the board and the solicitor with respect to the rate of flow being related to the traverse time. They then enter into a discussion of the relationship of a slow rate of circulation to a longer traverse time and the so-called contact time.

As stated before, the tribunals of the Patent Office (the board expressing some doubt) accepted appellants' figures which disclosed a traverse time ranging between 36.9 seconds and 147 seconds (although the board made no definite finding as to the maximum). Eliminating the technicalities, which are difficult to understand, the question admittedly is whether, assuming the appellants' traverse time at one end of the range is within the traverse time of less than 70 seconds and less than 45 seconds of the patent and of the appealed claims, the Patent Office tribunals, as is insisted by appellants, made a mistake in law in not following the Wemple case, supra. Appellants argue at great length that claims to which they would be entitled on the basis of their disclosure would clearly dominate the claims of the patent, and that under all the circumstances, if they are entitled to claim a traverse time between 36.9 seconds and 147 seconds, which they state the examiner does not deny, and no right of priority is tried by an interference proceeding, it would not be equitable to the patentees.

Appellants, upon the foregoing premise, urge: "* * * Wouldn't it be more equitable to set up an interference involving that portion of Altshuler et al. which they can make between Altshuler et al. and these appellants? Wouldn't it be advisable to declare an interference on these copied claims and permit Altshuler et al. to put in whatever defenses are available to them from records, which undoubtedly they would be able to bring forward? It might be that if the appellants' specification, which is still in application form, were thrown open to Altshuler et al., they might see fit to reissue their patent and seek broader claims, because it is submitted, and no one seems to deny it, that there is a great deal of similarity between the disclosure of Altshuler et al., on the one hand, and these appellants on the other."

Appellants seem to think that the Patent Office and this court are privileged to throw a patent owner into an interference and compel the determination of issues based upon what might happen if the interference were between two applicants or if the patentee sought a reissue.

Our holding herein is based upon the theory that the invention of the patentees is largely a matter of the discovery of a critical traverse rate, a portion of which is within the limits of the range of appellants. Unlike the facts in the Wemple case, supra, the inventions are different; and if appellants can, by manipulation of their device, regulate the traverse time to the range claimed in this appeal, the specific selection or combination of variables required to produce that result is not taught in their application. As before stated, the range of the appealed claims cannot be said to be inherent in their structure.

Therefore we are not here concerned with appellants' highly technical contentions with respect to alleged misunderstandings of the Patent Office tribunals concerning what appellants freely admit involves "consideration of some highly technical matters", because if everything contended for by appellants were true except their contention on said question of law, the decision below would have to be affirmed upon the statement of facts as presented by the appellants.

The board's decision, which is complained of in many respects by appellants, is not as definite and specific as could be desired, but notwithstanding this fact, and even though some of appellants' conten-

tions may not have been fully understood by it, we think it arrived at the right conclusion on the question of law involved.

We are in agreement with the following statement of the solicitor in his brief: "It is not apparent that the refusal of the appealed claims will be a hardship to the appellants. If, as they apparently contend, the particular traverse time specified is not critical, then claims which omit such time or define it more broadly should be as patentable as the appealed claims. The appellants should not be permitted, on the one hand, to include a definite limitation in claims, which cannot properly be done unless such limitation is a part of their invention, and, on the other hand, to base their right to make the claims on the contention that the limitation is actually of no consequence and that values other than those to which the claims are limited are equally suitable."

Claims 25, 26, and 31 were also rejected by the examiner on the further ground that the appellants do not teach the removal of heat in the reaction zone. This holding was not reversed by the Board of Appeals, and it said nothing about this ground of rejection. In view of our conclusion, it is not necessary for us to give it any consideration.

The decision of the Board of Appeals is affirmed.

Affirmed.