44 C.C.P.A. (Patents)

Lester C. CROME, Appellant,

v.

Henton MORROGH, Appellee.

Patent Appeal No. 6214.

United States Court of Customs
and Patent Appeals.

Nov. 30, 1956.

Marechal, Biebel, French & Bugg, and Greer Marechal, Dayton, Ohio (Lee B. Kemon, New York City, of counsel), for appellant.

Roy F. Steward, New Haven, Conn. (Merrill F. Steward, New Haven, Conn., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, RICH and JACKSON, retired, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter in issue in interference No. 85,061 to Henton Morrogh, the appellee in the instant proceeding. The invention involved is a gray cast iron which is defined in the following counts:

"Count 1. Gray cast iron which contains a small proportion of cerium uncombined with sulphur and in which, in its as-cast state, at least

the greater part of its graphite content has a nodular microstructure, said iron containing no sulphur in excess of about 0.02 per cent.

"Count 2. Gray cast iron which contains a small proportion of cerium uncombined with sulphur and in which, in its as-cast state, at least the greater part of its graphite content has a nodular microstructure, said iron containing no sulphur in excess of about 0.02 per cent, said iron exhibiting by standard strength tests mechanical properties superior to those of comparable gray cast iron not containing cerium."

The counts originated in Morrogh's patent No. 2,488,511, granted November 15, 1949 on an application filed January 25, 1949, and on January 17, 1951 they were copied by Crome in his patent application No. 41,907, filed July 31, 1948. The Morrogh patent and the Crome application are involved in the interference here under consideration. On a motion to shift the burden of proof Morrogh was accorded the benefit of the filing date of his prior application No. 760,-188 filed July 10, 1947, and was made senior party in the interference.

It appears from the record that cast iron may be either gray or white, the former type containing free carbon in the form of graphite flakes which impart the gray color to it, while in the latter the carbon present is in the form of carbides. It is possible to subject white cast iron to a process of heat treating which causes the carbides to break down with the result that nodules of carbon are formed throughout the iron. The iron so treated is malleable, while both gray and white iron, as cast, are brittle.

The Morrogh patent discloses a process which is said to result in the formation of a gray cast iron, which in the as-cast condition, contains carbon in nodular form, and which has improved mechanical properties, including greater strength. In order to obtain that result an iron is selected which has a relatively low sulphur content "preferably not more than 0.03 per cent or thereabouts," and

a small amount of cerium is added to the molten iron before casting.

It is stated in the patent that the first major effect of the cerium is to combine with the sulphur to form a cerium-sulphur compound which floats to the surface, and that so long as more than about 0.02 per cent of sulphur is present the cerium is not free to dissolve in the iron. However, when the sulphur is reduced below the amount specified, the remaining cerium is dissolved, thus producing the nodular structure and improved characteristics of the cast iron.

The Crome application, like the Morrogh patent, is directed toward the production of a gray cast iron which, in the as-cast form, contains nodules of carbon, rather than the conventional graphite flakes and, like Morrogh, Crome obtains that result by adding a substance containing cerium to the iron before casting. However, the cerium is only one ingredient, forming 45 per cent of a substance known as misch metal, and there is nothing in the application to suggest that the improved casting results from the cerium rather than the other elements of the misch metal. Crome does not stress the importance of any particular sulphur content. He states that an iron mix which "has been found to satisfactorily produce this new iron" includes "less than 0.04 per cent of sulphur."

■ The Board of Patent Interferences held that the Crome application does not contain a disclosure supporting the interference counts, and that holding will be considered first here, since, if it is correct, the decision appealed from must be affirmed, regardless of the other questions raised by the present appeal. Giambalvo v. Detrick, 168 F.2d 116, 35 C.C.P.A., Patents, 1112.

■■ In accordance with the settled practice, Crome, having copied the claims in issue from Morrogh's patent, has the burden of showing a clear basis for them in the disclosure of his application, Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606; Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937;

Keeling v. Heid, 118 F.2d 571, 28 C.C. P.A., Patents, 1008. Furthermore, it is elementary that every express limitation appearing in a claim copied for the purpose of interference must be regarded as material in determining the right to make the count. In re Draeger, 150 F.2d 572, 32 C.C.P.A., Patents, 1217, and authorities there cited.

Each of the counts here on appeal contains the express limitations that the cast iron contains "a small proportion of cerium uncombined with sulphur," and that it contains "no sulphur in excess of about 0.02 per cent." It was the opinion of the board that the Crome application does not contain a disclosure clearly satisfying either of these limitations.

The Crome application clearly does not contain an express disclosure of either of the limitations in question. No analysis of the cast iron produced by Crome's process is given and there is no specific statement as to what its sulphur content is, nor whether it contains cerium uncombined with sulphur. In fact, as pointed out by Morrogh, the application specification does not mention cerium by name except in one place where it is listed as one of the ingredients of the misch metal, which is added to the iron before it is poured into the casting mold.

The lack of express disclosure is not necessarily fatal to Crome's right to make the counts, since such right may be based upon inherent disclosure. However, as was pointed out in Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A., Patents, 1053, it is not sufficient that a person practicing the invention disclosed in the application might obtain the result set forth in the counts. Accordingly, in order to support a holding that Crome is entitled to make the counts in issue, it would be necessary to find that, if the procedure disclosed in his application is followed the resultant product will necessarily satisfy the requirements of the copied claims as to cerium and sulphur content. It would not be sufficient to show that it is possible to ob-

tain such a product by working within the ranges given in his application.

As above indicated, Crome's application contains no recognition that it is the cerium, rather than the other ingredients of the misch metal, which results in the improved casting, nor that the casting should contain cerium uncombined with sulphur. It does not state that any of the cerium combines with the sulphur, nor that there should be any particular relationship between the sulphur content of the iron mix and the amount of cerium used.

Crome relies upon statements in his application to the effect that sufficient misch metal remains in the molten material to control carbon precipitation during the cooling of the metal in the mold. That language, however, does not, in our opinion, necessarily indicate that uncombined misch metal will remain after the cooling of the metal and the carbon precipitation are completed.

Obviously it is not apparent from an examination of the Crome application alone that the product will inherently contain cerium uncombined with sulphur or that the surphur content of the iron will not exceed 0.02 per cent. Such inherency cannot be determined on the basis of theoretical considerations, but must be established by actual evidence; and the burden of establishing it rests upon Crome.

It is urged by Crome that the fact that he and Morrogh start with similar materials, add cerium or a material containing it, and obtain castings having a nodular microstructure affords evidence that the castings are of the same composition so far as cerium and sulphur are concerned. There is nothing in the record, however, to prove that such cerium and sulphur are essential to the production of a nodular microstructure. On the contrary, Crome testified that it was possible to get the same type of nodular microstructure by the use of magnesium, without cerium. It is entirely possible that under the particular conditions described by Crome it may have been possible to obtain the nodular

microstructure without the presence of cerium uncombined with sulphur and/or with a sulphur content of the iron in excess of 0.02 per cent. As above indicated, the fact that one or more castings actually made by Crome within the operating limits set forth in his application may have contained less than 0.02 per cent of sulphur does not establish that such a content is inherent in the process disclosed.

It seems evident both from Crome's testimony and from the file wrapper history of his application that he was not particularly concerned with obtaining a product of low sulphur content and, specifically, that he did not regard a sulphur content of 0.02% as being in any way critical. Thus, Crome testified as follows:

"XQ111. Did you ever determine the sulphur content of any of the as-cast products you obtained in these experiments about which you testified? A. Some of them.

"XQ112. And you told the attorneys about those results, did you? A. I don't recall whether I did or not.

"XQ113. You really didn't think that was of any importance, did you? A. I didn't attach too much importance to it, at that time.

*     *     *     *     *     *

"m RDQ34. You have testified as to the sulphur content of your nodular iron castings. Why do you feel that they contained less than .02 sulphur—not more than .02 sulphur? A. Well, I don't know as I would want to state specifically not more than .02. I would say, maybe about .02 because I don't know specifically whether that sulphur has to be .02, .015 or .03, or what, but we do know it has to be of a low order."

From the last-quoted answer it will be seen that Crome himself, even in answer to a leading question, declined to state that the particular sulphur content which is an essential limitation of each

of the counts formed any part of his invention.

Similarly, in an amendment filed in response to a rejection of some of the claims of Crome's application on the basis of an article by Morrogh and Williams, the following statements were made:

"Applicant on the other hand has found that the percentage of sulphur found in ordinary gray iron mixes in no way prevents the additive material such as the misch metal alloy, from causing the free graphite to appear in the final casting in the form which he has described as nodular or spherical *   *   *. Applicant in practice has made no efforts to produce the sulphur content to the low limits of below .015 as specified by Morrogh and Williams but as stated in the specification very satisfactory results are attained with sulphur contents as high as substantially .04%, almost three times the percentage specified by Morrogh and Williams. *   *   *"

██ Upon careful consideration of the record we conclude that the subject matter of the counts is not expressly disclosed in Crome's application and has not been shown in the disclosure to be inherent with the degree of certainty required where an applicant copies the claims of a patent for interference purposes.

██ The Board of Patent Interferences further held that Crome had not presented any claim to substantially the invention covered by the interference counts until more than a year after Morrogh's patent was issued, and that he was therefore barred by Title 35, Section 135 of the United States Code. We are in agreement with that holding.

Moreover, regardless of what Crome's application might be held to disclose, the above-quoted portions of his testimony and of the record of his application, seem clearly to show that he had no intention, prior to the time when he copied the

**394**

claims here in issue, more than a year after Morrogh's patent was granted, of claiming a casting which in its as-cast state contains not more than 0.02 per cent of sulphur.

For the foregoing reasons, Morrogh must prevail in the interference and it is unnecessary to consider the remaining questions raised by the appeal.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.

JACKSON, Judge, retired, was recalled to participate here in place of COLE, Judge.

MORLEY, Judge, was not present at the argument of this case, but, by agreement of counsel, did participate in the decision.