52 CCPA

**William A. VOGT, Appellant,**

v.

**Harry McFEATERS, Appellee.**

**Patent Appeal No. 7273.**

United States Court of Customs and Patent Appeals.

Feb. 18, 1965.

Brown, Jackson, Boettcher & Dienner, Chicago, Ill. (John A. Dienner, Henry H. Babcock, Edward C. Grelle, Chicago, Ill., of counsel), for appellant.

Green, McCallister & Miller, Pittsburgh, Pa. (Thomas G. Miller, Pittsburgh, Pa., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

Vogt, the senior party, appeals from the decision of the Board of Patent In-

**316**

terferences awarding priority of invention as to all counts remaining in Interference No. 89,817 to McFeaters.

The interference involves McFeaters' patent No. 2,847,206 issued August 12, 1958 on an application filed June 20, 1955, and Vogt application serial No. 400,480, filed December 28, 1953. As originally declared the interference included counts 1 through 14 corresponding to claims 1 through 12, 18 and 19, respectively, of the McFeaters patent. However, counts 1, 2, 3, 8, 12, 13 and 14 were eliminated by the primary examiner who ruled them unpatentable over the prior art, and the board thus determined priority as to only counts 4, 5, 6, 7, 9, 10 and 11.

Although both parties took testimony, the board based its decision on a holding that Vogt's application does not support the counts and did not consider that testimony. Hence, the only issue before us is whether the board erred in that holding.

The involved counts all depend upon canceled count 1 which reads:

"Apparatus for receiving a hot fluid effluent from the mouth of a generator such as a converter and for conducting the effluent to a discharge-receiving means including an enclosing hood defining an effluent passageway therethrough and open at its lower end to receive the effluent from the mouth of the generator, said hood being open at its upper end to discharge the effluent therefrom into the discharge-receiving means, and means for moving the upper end portion of said hood into and out of a registry with the discharge-receiving means, while moving its lower end portion into and out of a cooperative effluent-receiving relationship with the mouth of the generator."

The counts in issue read as follows:

"Count 4

"Apparatus as claimed in count 1 wherein said upper end of the hood terminates in a hollow flange and includes means for passing a coolant therethrough.

"Count 5

"Apparatus as defined in count 1 wherein, cooling fluid jacket portions extend along the longitudinal extent of a lower portion of said hood, and inlet and outlet means is connected to said jacket portions to supply cooling fluid to and remove warmed fluid from said jacket portions.

"Count 6

"Apparatus as defined in count 1 wherein, said hood has cooling fluid jacketing, a jacket ring about the lower end portion of said hood, and spray means connected to said jacket ring to direct a cooling fluid spray upon the effluent entering said hood from the generator.

"Count 7

"Apparatus as defined in count 1 wherein said hood has at one end portion concentric shells, means to space the shells from each other, means to seal the ends of the shells to each other, baffles disposed substantially longitudinally between the shells, a coolant-delivering pipe extending around the outer shell, a conduit extending from said pipe to a delivery station between the shells adjacent a lower end thereof, a coolant-exiting pipe extending around the outer shell, and a conduit extending from the last-mentioned pipe to an exit station between the shells adjacent an upper end thereof.

"Count 9

"Apparatus as defined in count 1 wherein, said hood has at one end portion a pair of radially spaced-apart shells defining a cooling spacing therebetween, means enclosing end portions of the spacing, and means for supplying cooling fluid to and removing warmed fluid from the spacing.

"Count 10

"Apparatus as defined in count 9 wherein baffle means defines circuitous cooling fluid passageways

along the spacing from said last-mentioned means.

"Count 11

"Apparatus as defined in count 10 wherein, the generator is supplied with oxygen through a vertically-extending supply lance, and said hood has a through-port portion sealed off from its jacket portions to receive and by-pass the supply lance therethrough into the mouth of the generator."

The counts relate to apparatus for receiving hot fluid effluent from the mouth of a generator such as a converter vessel for use in the oxygen-blow process of refining steel. In that process, an oxygen-providing gas is ordinarily fed downwardly into the generator and large volumes of gas and fumes are evolved as the oxygen burns off impurities. The invention in issue provides exhaust apparatus which is adapted to be positioned close to the generator to convey gases away during a blowing operation, yet which also can be moved to another position to permit charging and emptying of the generator between operations. A brief description of the structures of both parties will facilitate a full understanding of the case.

The McFeaters construction is best illustrated by his Figure 1, reproduced below.

Fig. 1

In this figure, a tubular hood 83 is mounted on a carriage which includes a frame 37 and rollers 35 and 36. The carriage travels on a runway 30 between an upper or retracted position and a lower or operative position. In the upper position, shown in Figure 1, the upper end 88 and the lower end 87 of the hood are out of engagement with other apparatus and the hood is inoperative. When the hood is moved to its lower position, the lower end 87 is disposed about the open upper end of vessel or generator 20 to receive the effluent therefrom and the up-

per end 88 is in engagement with the inlet end of a discharge or exhaust receiver 21.

The lower end of the hood comprises spaced concentric shells forming a passage or jacket fed with coolant liquid through an encircling pipe. A port is provided in the upper wall of the lower portion of the hood so that a lance 97 carrying oxygen-providing gas may be inserted downwardly therethrough into the open mouth of the generator. A tube having inwardly-facing nozzles spaced therealong is provided at the lower end of the hood to direct a cooling liquid into the shell. The upper end of the hood terminates in a hollow flange through which a cooling liquid can be circulated.

Figures 1 and 3 of Vogt's application are as follows:

In the Vogt construction, a duct 20 is supported in a position above and spaced from a steel converter or vessel 11 to receive gases generated in the latter during the blowing period, the space between the vessel and duct being provided to allow the vessel to pivot on trunnions 12. Sealing means or collar 23 permits selectively enclosing the space between the vessel and duct to form a conduit between the two. The collar is made up of two equal semi-cylindrical parts movable in a horizontal plane from a spaced-apart inoperative position shown in Fig. 1 to a position where they form a closed cylinder with its upper end making engagement with the lower edge of the duct at 27 and its lower end making similar engagement with the upper end of the vessel at 28. The sections are each provided with wheels 44 movable on rails 45 into and out of operative position by means of hydraulic cylinders at 43. Each of the two sections is provided with in-

dependent means for passing cooling water through ducts 32. Inlet pipes 42 lead to passages 41 which have a plurality of apertures 40 through which water is sprayed into the exhaust gases, the heat therefrom forming a protective steam layer over insulation 26.

The board found that Vogt lacks support for canceled count 1, upon which all the counts now in issue depend. In reaching that conclusion the board referred to the recitation of "an enclosing hood defining an effluent passageway therethrough" to receive effluent from the mouth of the generator and to the following clause of the count:

"* * * means for moving the upper end portion of said hood into and out of a registry with the discharge-receiving means, while moving its lower end portion into and out of a cooperative-relationship with the mouth of the generator."

It then concluded:

"In our judgment the Vogt application is totally lacking in support for this last limitation. It bears some similarity to the McFeaters patent in that it provides interconnecting means in the form of a sealing member 23 which forms a disruptible collar for conducting gases from the converter 11 to the lined duct 20, but here the similarity ends. The sealing member 23 of Vogt is formed in two parts, which are relatively movable radially between the positions of figures 3 and 2, to permit access to the vessel 11 for discharging and reloading; but these parts form the desired sealing collar or hood *only when brought together*. Although the collar formed by bringing these parts together from the position of Figures 1 and 2 to the position of Figure 3 might be said to be an enclosing hood as required by the counts, it must be noted that these counts require that the enclosing hood *as such* be movable between positions in which its upper end is respectively 'into and out of [a] registry with the discharge-receiving means', and its lower end portion is respectively movable 'into and out of a cooperative effluent-receiving relationship with the mouth of the generator.' Vogt discloses no means for moving an 'enclosing hood' in this manner.

"In fact Vogt has no means for moving 'an enclosing hood' between the positions recited or between any positions. If the collar formed by bringing the two sections together and into sealing contact may be said to constitute 'an enclosing hood' once the parts are brought together, it must be noted that there is no means to move the hood, but only a means to destroy its identity as a collar or hood. * * *"

Vogt urges that the recitation of "an enclosing hood defining an effluent passageway therethrough and open at its lower end to receive effluent from the mouth of the generator" refers to the hood "in its operative position when it defines an effluent passageway from the mouth of the generator" and that his apparatus defines such a hood when in operative position. He further states that the board erroneously thought that the hood had to be moved to its inoperative position as a one-piece or unitary structure although there is no such limitation in count 1. On that basis, it is Vogt's position that the board improperly read into the counts the limitation that the enclosing hood "as such" be movable between the operative and inoperative positions.

■ We cannot agree with that reasoning. Count 1 requires as an element "an enclosing hood defining an effluent passageway therethrough." That recitation is not satisfied by separate elements which constitute merely spaced half-collar members in one position recited by the count and at best define a hood only in a different position. Since the counts require means for moving the ends of the hood, and the hood is specifically defined as an "enclosing hood," we think the

board correctly ruled that Vogt failed to disclose means for moving the hood "as such." In so deciding, we consider the count unambiguous, as did both parties and the board, and accord it the broadest construction the language reasonably will bear without recourse to the specification from which it originated. See In re Kelley, 305 F.2d 909, 49 CCPA 1359. On the other hand, acceptance of the interpretation sought by Vogt would broaden the scope of the recitations in count 1 well beyond what we regard as the reasonable meaning of the language employed.

■■ The pertinent recitations are discussed above with respect to count 1 in which they are set out, but of course they are actually part of each of the dependent counts in issue. The applicable rule is that every express limitation must be regarded as material in determining the right to make a count. Crome v. Morrogh, 239 F.2d 390, 44 CCPA 704. Vogt must support the additional limitations in the dependent counts in issue in relation to the basic structure, and if he does not support the recitations of the basic structure, he plainly has no support for the additional recitations of the dependent counts in relation to that structure.

The issue before us is quite narrow. What we have here are counts 4–7, 9, 10 and 11 to combinations of a movable hood with various cooling means. We decide only that Vogt cannot make the combination recited in those counts.

In view of the foregoing, the decision of the Board of Patent Interferences is affirmed.

Affirmed.

SMITH, Judge (concurring).

My decision to affirm the Board of Patent Interferences is predicated upon my agreement with the following statement of the board:

"In fact Vogt has no means for moving 'an enclosing hood' between the positions recited or between any positions. If the collar formed by bringing the two sections together and into sealing contact may be said to constitute 'an enclosing hood' once the parts are brought together, it must be noted that there is no means to move the hood, but only a means to destroy its identity as a collar or hood."

To meet the counts in issue, the burden was on Vogt to show that the "enclosing hood" called for in each count is met by his construction. It is my opinion that he has not discharged this burden. Vogt has disclosed in his specification what is there termed a "sealing member." Vogt describes it as follows:

" * * * This sealing member is in the general form of a relatively short, open ended cylinder or tube, separated into two equal semi-cylindrical parts on a vertical median plane, the two parts being adapted to horizontal motion, having their confronting faces 24 in contact in the closed or blowing position, and being spaced apart, equidistant from the vertical center line of the vessel in the retracted or vessel loading and discharging position. * * * "

Such a construction is properly a split collar which can perform the functions of McFeaters "enclosing hood" only when the two segments of the collar are brought together during one cycle in the operation of the furnace. During this cycle the collar admittedly performs the same functions as does the "enclosing hood" of McFeaters. Here, however, the similarity ends. The collar of Vogt is broken and its identity as a collar is destroyed when the two segments are moved away from each other during an ensuing cycle in the operation. When this is done there is no longer a unit identity which permits Vogt's collar to be moved *as* an "enclosing hood" in the manner called for in the counts.