56 CCPA

**Samuel STORCHHEIM, Appellant,**

v.

**T. Stevens DAUGHERTY, Appellee.**

**Patent Appeal No. 8151.**

United States Court of Customs and Patent Appeals.

May 22, 1969.

1394

Edward F. McKie, Jr., Donald C. Simpson, Irons, Birch, Swindler & McKie, Washington, D. C., attys. of record, for appellant.

Paul N. Kokulis, William T. Bullinger, Cushman, Darby & Cushman, Washington, D. C., John F. C. Glenn, Richmond, Va., for appellee.

Before RICH, Acting Chief Judge, COLLINS and NEESE, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

ALMOND, Judge.

This appeal is from the decision of the Patent Office Board of Patent Interferences in an interference[1] involving appellant's continuation-in-part application[2] of an earlier filed parent application[3] and appellee's patent,[4] awarding priority to the patentee Daugherty.

The invention involved relates to a process for forming aluminum sheet, or the like, by passing preheated aluminum particles between a pair of nip rolls. Claim 11 of the Daugherty patent, which forms the sole count of the interference, reads as follows:

The method of making a continuous length of aluminous metal, comprising the steps of: preheating particles of aluminous metal substantially all of which are coarser than 60 mesh and individually covered with a surface layer of aluminum oxide, to a temperature in the range from about 750°F. to about 1000°F.; feeding the preheated particles in free-flowing condition to the nip of a pair of work rolls; and rolling the particles in a single pass between said rolls to form a fully densified and self-supporting length of aluminous metal.

The sole issue is appellant's right to make the count based upon the disclosure of his 1958 parent application.

On that issue the board narrowed the area of inquiry as follows:

We agree with Storchheim and the Primary Examiner to the extent that we find the disclosure in application 742,471 provides clear and sufficient support for every limitation in the count in issue except that set forth in the following language with our parenthetical inclusion, thus

"Substantially all of which (preheated particles of aluminous metal) are coarser than 60 mesh."

We note that in coming to this conclusion we have not overlooked the fact that the size of the particles, as well as the temperature to which they are heated and presence of a surface of aluminum oxide "individually" covering each particle, has effect on the "free-flowing" condition of the particles.

On examination of the disclosure of the 1958 Storchheim application, the board found nothing therein to support the limitation that substantially all the particles

1. Interference No. 94,375.
2. Serial No. 337,985, filed January 10, 1964, for Method and Apparatus for Hot Rolling Metal Powders.
3. Serial No. 742,471, filed June 17, 1958, for Method of Fabricating Aluminum Articles by Hot Rolling of Aluminum Powder.
4. U. S. Patent No. 3,076,706 issued Feb. 5, 1963 on an application filed Oct. 21, 1958.

should be coarser than 60 [5] mesh, and stated:

> By his disclosure, Storchheim has clearly set only an upper limit on the size of particles he uses, without regard for the lower limit of fineness and without any apparent appreciation of any criticality as to particle size.

On the basis of this record we hold that Storchheim does not have sufficient support for the specific thing set forth in the count in issue. The broad teaching in his application is in no way tantamount to a teaching or suggestion of using aluminum particles of the size set forth in the count in issue, i. e. "substantially *all * * * coarser* than [60] mesh." * * *

The board also considered the Storchheim 1958 disclosure to see whether it disclosed the "gist of the invention" defined by the count, in view of our statement in Hall v. Taylor, 332 F.2d 844, 51 CCPA 1420, that:

> We find in the *Draeger* opinion what we consider the key to determining whether a disclosure supports a claim for interference purposes—the key which appellant himself recognizes— viz., does the disclosure *teach the gist of the invention* defined by the claim? While we realize that all limitations of a claim must be considered in deciding what invention is defined, it is futile merely to compare *quantitatively* range limits and numbers set out in counts with range limits and numbers disclosed in an allegedly supporting specification. Closer scrutiny is required to get at the essence of what invention the count purports to define.

The board decided that Storchheim's parent application did not disclose the gist of the invention defined by the count, stating:

> We believe on the basis of the record reviewed in the foregoing that the gist

of the invention disclosed and claimed by Daugherty resides to a substantial degree in the recognition of the advantages to be obtained from the use of an aluminum powder having particles of a size above a critical minimum mesh size and that he has set it forth in limiting his claims, particularly claim 11, to the use of particle sizes above that minimum.

We find nothing in the disclosure of Storchheim which evidences any such appreciation of the solution to the problems of sticking and explosions or any thought of limiting the minimum size of particles to be used. On the contrary, Storchheim teaches the use of powders of subsieve size (minum 325 mesh) and, as noted before, asserts that particle size is not critical.

The board concluded:

> Finally, we believe that irrespective of which of the approaches discussed above is taken in arriving at a conclusion in this case, the rule expressed in Segall v. Sims et al., 47 CCPA 886; 275 F.2d 661; 125 USPQ 394; 1960 C.D. 224 and restated in the case of Smith v. Wehn, 50 CCPA 1544; 796 O.G. 860; 318 F.2d 325; 138 USPQ 52; 1963 C.D. 790 (794) is applicable here. Thus:

>> When an applicant copies a claim from a patent, he must show that he is entitled to make the claim. All limitations in the copied claim will be considered material in determining applicant's right to make the claim, *and doubts arising as to applicant's right to make the claim must be resolved against him.*

Consistent with that rule we hold that there is substantial doubt as to Storchheim's right to the benefit of his earlier filed application Ser. No. 742,471 as a constructive reduction to practice

---

5. In defining the size of particles it is common to make reference to a sieve range. Within the sieve range the particle size is measured as the size of the opening of a screen of standard woven square mesh which will just pass or retain the particle. Tables relating sieve numbers to the dimensions of the mesh openings may be found, for example, in a Treatise on Powder Metallurgy by Claus C. Goetzel, Ph.D., Volume I, Technology of Metal Powders and Their Products, 1949, Interscience Publishers, Inc., New York, discussed by the board.

of the invention here in issue and, therefore, that he is not entitled to it.

Here appellant contends that the limitation that substantially all the particles should be greater than 60 mesh, is not a critical limitation of the invention defined by the count. In the parlance used in patent prosecution, we customarily understand a critical limitation to be one essential either to the operativeness of the invention or to the patentability of the claims. Here, appellant argues that "substantially all * * * coarser than 60 mesh" is not a critical limitation in the operative sense because the limitation, though preferable for operative reasons in the practice of Daugherty's invention to enhance free flowing of Daugherty's acicular shape particles and to avoid explosion hazard when creating the particles in the manner contemplated by Daugherty, is not critical to the operation of the invention defined by the count which does not specify particle shape and which recites oxide coated, aluminum particles which are not pyrophoric. Further, appellant argues, the limitation "substantially all * * * coarser than 60 mesh" is not a critical limitation in the patentability sense either in view of the allowance to Daugherty of claims of broader scope reciting particles substantially all of which are coarser than 200 mesh. It is unnecessary for us to determine whether the limitation "substantially all * * * coarser than 60 mesh" is a critical limitation of the count since we see no requirement in the prior cases that a limitation in a copied patent claim should have to amount to a *critical* limitation from the standpoint of patentability or operability, before it could be considered a *material* limitation from the standpoint of the ability of the copier to make the count. Kean v. Wheelan, 102 F.2d 824, 26 CCPA 1010 at 1016; Weber v. Good et al., 129 USPQ 32 at 36 (Bd.Pat.Intf.). Appellant's position that the "substantially all * * * coarser than 60 mesh" recitation is not a *critical* limitation does not therefore remove its significance as a *material* limitation which it remains in accordance with the often declared [6] rule that *every*, express limitation appearing in a claim copied for the purpose of interference must be regarded as material in determining the right to make the count.

We therefore turn to the disclosure of the 1958 Storchheim application to see what support, express or inherent, there is for the material limitation that substantially all of the particles should be coarser than 60 mesh. As there is no express disclosure of such a limitation in Storchheim's 1958 application, we must look for inherent supporting disclosure, bearing in mind that where inherent disclosure is relied upon the test is that set forth in Binstead et al. v. Littman et al., 242 F.2d 766, 44 CCPA 839 at 844, namely:

> This is not to say, however, that each limitation in an interference count must be expressly set forth *in haec verba* in the disclosure relied upon. It is sufficient if, as in this case, the specification is so worded that the *necessary and only reasonable* construction to be given the disclosure by one skilled in the art is one which will lend clear support to each positive limitation in the interference count.

The most relevant portions of the 1958 Storchheim application relating to particle size are reproduced as follows:

> The particle size of the aluminum powder is not critical, but should be relatively small, and the particular temperature to which the aluminum is heated is also not critical. * * *
>
> * * * * * *
>
> By experimentation it has been found that sheet prepared by this process from fine powders, minum 325 mesh annealed at 650°F. still exhibits a room temperature tensile strength of 24,000 psi and an elongation of 3.5%.
>
> * * * * * *
>
> As-rolled sheet from minus 10 mesh powder, although produced as hard sheet by this process (24,000 to 34,000

---

6. See, for example, Crome v. Morrogh, 239 F.2d 390, 44 CCPA 704 at 707 (1956).

psi having elongations of 2.5 to 4.5%), can be further cold rolled to form. Fine powder can be reduced fifty per cent to tensile strengths as high as 35,000 psi (starting from 26,000 psi) and elongations of 2.5%. Coarse powder (minus 10 mesh) sheet can be reduced cold up to 95%, and at 75% reductions (0.010 inch thick strip) tensile strengths as high as 45,000 psi have been obtained with elongations on the order of 2.0%. * * *

* * * * * *

As above stated, any desired particle size of aluminum powder between 2 and 200[7] microns may be heated to any desired satisfactory temperature between 600 and 1,200°F., and subjected to any desired pressure to produce the compacted article. The strip so produced requires no further sintering or heat treatment, and is ready for final machining or use, in an as-rolled strip.

Discussing these teachings appellant points to the extract disclosing that the sheet rolled from the fine powder has a lower tensile strength than that rolled from the coarser powder, as suggesting to one skilled in the art that coarse particles are to be preferred. Unfortunately the clarity of this suggestion appears to

be at least partially offset by the other explicit teachings that "The particle size of the aluminum powder is not critical, but should be relatively small * * *" and that "* * * any desired particle size of aluminum powder between 2 and 200 microns may be heated to any desired satisfactory temperature between 600 and 1,200°F., and subjected to any desired pressure to produce the compacted article." It therefore appears to us that it cannot be concluded, in the language of *Binstead*, that the necessary and only reasonable construction to be given the disclosure by one skilled in the art is one which will lend *clear support to the positive limitation* in the interference count that "substantially all of which [particles] are coarser than 60 mesh."

Nevertheless, appellant points out, the 1958 Storchheim specification does disclose particle sizes from 325 mesh to –10 mesh thus overlapping the narrower range of particle sizes of Daugherty. Therefore it follows applying the rationale of Hall v. Taylor, argues appellant, that the Storchheim disclosure supports the count. In *Hall*, relating to a count defining a paper manufacturing process, the limitations of the count and the disclosure of the copiers specification were as follows:

| Count Limitations | Copiers Specification |
|---|---|
| (a) an $SiO_2/CaO$ mol ratio limited by a maximum value of about 5:1 | the mole ratio of $SiO_2$ to CaO in the calcium silicate is preferably in the range 2:1 to 4:1 |
| (b) a bound water content limited by a maximum value of about 10% by weight of said pigment | a bound water content of about 3 to about 15 per cent by weight |
| (c) adjusting the pH to a value within the range of about 4.5–6.5 | maintained at a pH in the range of 4 to 9.2 |

---

7. These dimensions were related to the sieve sizes under consideration by the board, as follows:
    * * * particles of "between 2 and 200 microns" size are substantially finer than particles that are "coarser than 60 mesh" irrespective of whether the Tyler or the U. S. series is taken as standard. Thus, 2 microns is so fine as to find no corresponding sieve and 200 microns is of a size between 70 and 80 mesh or either Tyler or U. S. series.

The situation in *Hall* appears to us to be distinguishable from the present case by just the same reasoning that was used by this court in In re Draeger, 150 F.2d 572, 32 CCPA 1217 to reject a similar argument regarding overlapping ranges advanced by the appellant in *Draeger* on the basis of an earlier decision in Wemple et al. v. Pierce et al., 75 F.2d 998, 22 CCPA 1064. In Draeger, the court said:

> The situation in that case is not the one presented here. There the inventions of the parties were substantially the same, as was disclosed by the similarity of the ranges of both parties. That case should not be regarded as holding that in every case where a broad range given in an application overlaps that of a claim at some point, it will always form a sufficient basis for the right of making the claim. In the instant case, as has been pointed out, the ranges in the appealed claims are so different from the ranges disclosed by appellants that it is obvious that the inventions are different.

In summary, appellant has failed to establish support for the material limitation of the count that substantially all of the particles should be coarser than 60 mesh, in the 1958 Storchheim patent application. The decision of the board is therefore affirmed.

Affirmed.

NEESE, J., concurs in the result.

RICH, Judge (concurring).

I concur in the result reached by the majority but I abstain from the discussion of the "criticality" and "materiality" of the limitation in the count that "substantially all of" the particles of aluminous metal "are coarser than 60 mesh."

Under the law as propounded by this court ever since its creation—law inherited from its predecessor in jurisdiction, the Court of Appeals for the District of Columbia—all that matters is that the limitation is clearly expressed in the count, that it is there. If it is there, it will not be disregarded and the copier must establish that he has supporting disclosure in the application on which he relies.

I neither agree nor disagree with appellant's contentions about criticality—whatever "criticality" may mean—because that is an irrelevant consideration, where, as here, "coarser than 60 mesh" is the gist of the invention as defined in the count. Being irrelevant to the issue here, this is not the place to discuss what the meaning of that term is.

"Coarser than 60 mesh" is an express limitation in the copied claim which became the count and there can be no doubt about its meaning. It cannot be disregarded and appellant does not disclose it. That is sufficient for decision. The following cases fully support this view. In re Bijur, 40 F.2d 999, 17 CCPA 1134; In re O'Dowd, 47 F.2d 392, 18 CCPA 1002; Field v. Stow, 49 F.2d 1072, 18 CCPA 1502; Sweetland v. Cole, 53 F.2d 709, 19 CCPA 751; Mudd v. Schoen, 54 F.2d 959, 19 CCPA 840; Bragg v. Besler, 56 F.2d 881, 19 CCPA 1084; In re Fischer, 58 F.2d 1058, 19 CCPA 1231; In re Creveling, 61 F.2d 862, 20 CCPA 701; In re Replogle, 70 F.2d 375, 21 CCPA 1068; Kean v. Wheelan, 102 F.2d 824, 26 CCPA 1010; In re Draeger, 150 F.2d 572, 32 CCPA 1217; Crome v. Morrogh, 239 F.2d 390, 44 CCPA 704.

In some of the above cases it is said that "express limitations" must be regarded as "material" but it is not seen how this legal characterization adds anything to the rule that express limitations will not be ignored in determining whether the count finds support in an applicant's disclosure.

With reference to "materiality," note is taken of the provision of Rule 205, Rules of Practice in Patent Cases, which provides that in copying patent claims for interference "an immaterial limitation or variation" may be excluded. This was not attempted by appellant herein and he cannot now be heard to insist that the involved limitation is not material, however else it may be characterized.

Hall v. Taylor, 332 F.2d 844, 51 CCPA 1420 (1964), cannot help appellant. It

is not a comparable case. Taylor copied the count from Hall's patent and the question was whether it found support in his 1953 parent application, on the date of which he was obliged to rely. The board found it did and we affirmed. We held, in accord with the established rule, that "all limitations of a claim must be considered" and, doing so, we found Taylor's application supported them. The appellant, Hall, was urging lack of support in Taylor's application on the basis of " 'criticality' in the *combination* of three parameters specifically recited in the counts." Neither we nor the board were able to find any such criticality and we agreed that the counts, taking all of their limitations into consideration, found support in Taylor's application. Here, from a full consideration of appellant's disclosure, we are unable to find support for the "coarser than 60 mesh" express limitation.