**Application of John F. WAYMOUTH and Frederic Koury.**

**Patent Appeal No. 8991.**

United States Court of Customs and Patent Appeals.

Nov. 8, 1973.

Supplemental Opinion in Rehearing Jan. 24, 1974.

See 489 F.2d 1297.

James Theodosopoulos, Danvers, Mass. (GTE Sylvania Incorporated), for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. William H. Beha, Jr., Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claims 18–21 of appellants' application[1] under 35 U.S.C. § 132 as containing "new matter." We reverse and remand.

---

1. Serial No. 230,944, filed October 16, 1962, for "Electric Discharge Device" a continuation-in-part of application serial No. 209,974, filed July 13, 1962.

Claims 18–20 are exact duplicates of claims 1, 2 and 6 of a patent[2] to Edris et al., and claim 21 represents a modified claim based on claim 1 of said patent.

The invention relates to a high pressure arc discharge lamp shown in the accompanying figure where 12 is a hermetically sealed arc tube having internal terminal electrodes 13 and 14. The arc tube contains a light emissive filling material.

Claim 18 reads:

18. A discharge lamp adapted to be normally operated with a predetermined power input, said lamp comprising:

(a) a light-transmitting elongated arc tube which encloses a predetermined volume;

(b) arc supporting electrodes disposed within said arc tube proximate the ends thereof;

(c) lead-in conductors connecting to said electrodes and sealed through said arc tube;

(d) a discharge-sustaining filling within said arc tube, said discharge-sustaining filling initially placed as a dosing charge into said arc tube, said dosing charge including as essential constituents a predetermined pressure of inert ionizable starting gas, mercury, sodium iodide, and a predetermined amount of selected metal which will combine with free iodine as may be released during operation of said lamp to form metallic iodide,

(1) said mercury constituent of said dosing charge present in predetermined amount which when fully vaporized during normal operation of said lamp will provide a predetermined pressure of mercury vapor in said arc tube,

(2) said sodium iodide constituent of said dosing charge present in amount of *at least 0.17 mg./cc. of said arc tube volume,*

(3) said selected metal constituent of said dosing charge present at least in amount sufficient to react with free iodine, as may be released during operation of said lamp, in amount of $4.5 \times 10^{-7}$ gram-atom of iodine per cc. of said arc tube volume, and

(4) the amount of combined and uncombined metal in said dosing charge, other than mercury being predetermined to:

(a) combine stoichiometrically with the total amount of iodine in said

2. 3,398,312, issued August 20, 1968, for "High pressure vapor discharge lamp having a fill including sodium iodide and a free metal," on application serial No. 516,200 filed November 24, 1965, which is a continuation-in-part of serial No. 317,508 filed October 21, 1963.

dosing charge plus (b) provide at least sufficient metal to combine with free iodine, as may be released during operation of said lamp, in amount of $4.5 \times 10^{-7}$ gram-atom of iodine per cc. of said arc tube volume; and

(e) the thermal conductivity from said arc tube and the predetermined power input at which said lamp is *adapted to be operated bearing such relationship to one another that the minimum temperature* on said arc tube when said lamp is operating is *at least 580°C*. (Emphasis added.)

The above italicized phrases are the ones objected to by the Patent Office as being drawn to "new matter."

Claim 19 depends on claim 18 and specifies an amount of sodium iodide from 0.6 to 4.5 mg./cc. of arc tube volume. Claim 20 recites a preferred amount of the selected metal. Claim 21 is similar to claim 18 except that the phrase "at least 580°C." has been replaced by "sufficient to vaporize an effective amount of said constituents."

Appellants raise the issue of a "new rejection" applied by the board and also contest the "new matter" rejections.

## THE ISSUE OF NEW REJECTION

It is necessary to present some of the prosecution history in this case in order to understand the issue of a "new rejection." The examiner's final rejection first raised the issue that the claims contained "new matter" in that they recited "sodium iodide," whereas he alleged that appellants' specification referred only to "sodium." His rejection stated that the specification referred to the addition of "certain amounts of sodium within a specified range and not sodium iodide" and could not, therefore, include 0.17 mg./cc. of sodium iodide (specified in the claims of the Edris et al. patent and the claims before the examiner). The examiner offered no

objection to similar volume limitations with respect to iodine in claim 18(d)(3) and 18(d)(4) and sodium iodide in claim 19.

On the issue of appellants' disclosure of sodium iodide, the board said: "We agree with the appellant with respect to this first point, that his disclosure of utilizing sodium iodide is sufficient to support claims requiring that an 'essential constituent' of the claimed device is sodium iodide." However, in regard to the 0.17 mg./cc. limitation, the board declared: "Since the appellants fail to disclose the volume of their tube, we are unable to see where they are able to find support for a value which is dependent on such volume. . . ."

In response to the board's decision and opinion, appellants submitted an affidavit, a petition for reconsideration, and an amendment containing a proposed claim 23 to overcome the board's rejection. The petition asked that the board reconsider its decision and allow the claims or enter claim 23 to overcome the rejection. The amendment was preceded by a request that it be considered by the board or remanded to the examiner under MPEP 1214.01(B).[3]

The board's decision on the petition for reconsideration stated that its comments concerning the "0.17 mg./cc." limitation were merely "an additional reason" for affirming the examiner's rejection based on "new matter."

■ We believe the prosecution history of this application clearly shows that the examiner was *only concerned with* an alleged failure to disclose sodium iodide. However, after finding for appellants on this issue, the board proceeded to sustain the rejection on a wholly different basis. Although the same phrase ("sodium iodide . . . present in amount of at least 0.17 mg./cc. of arc tube volume") was questioned by both the examiner and the board, the bases of

3. Among other things this provides:
"Where the Board's decision completely removes the examiner's rejection as to one or more claims and substitutes a new one

under Rule 196(b), the applicant . . . . . . may amend the claims involved or substitute new claims to avoid the art or reasons adduced by the Board. . . ."

their rejections were wholly different, necessitating different responses by appellants.

To attempt to deny appellants an opportunity to provide a different and appropriate response to the board's rejection by saying that the board merely advanced "an additional reason" for affirming the examiner begs the question and does not satisfy the administrative due process established by Rule 196(b) of the Patent Office.[4] 73 C.J.S. Public Administrative Bodies and Procedure § 60. What we said in In re Wiechert, 54 C.C.P.A. 957, 370 F.2d 927, 152 U.S.P.Q. 247 (1967), is particularly apposite:

> We turn now to the issue raised by the "position isomer" first noted in the board's opinion. The board's language, quoted above, in noting the isomer, appears to us to be a rejection of the appealed claims on the ground the claimed compounds are obvious, under 35 U.S.C. § 103, in view of the disclosed isomer. For reasons to be stated below, we find this to be a ground of rejection which was specifically pointed out for the first time by the board and, under the facts of this case, we believe that appellant should be afforded an opportunity to respond to that rejection. In view of the board's failure to do so, we remand the case to the board for further proceedings. Cf. In re Yale, 52 C.C.P.A. 1688, 347 F.2d 995, . . . .

See also In re Eynde, 480 F.2d 1364, 178 U.S.P.Q. 470 (C.C.P.A.1973), In re Moore, 58 C.C.P.A. 1340, 444 F.2d 572, 170 U.S.P.Q. 260 (1971), In re Echerd, 471 F.2d 632, 176 U.S.P.Q. 321 (C.C.P.A.1973) and In re Bulina, 53 C.C.P.A. 1275, 362 F.2d 555, 150 U.S.P.Q. 110 (1966).

In view of the foregoing, we hold that the board's action constituted a new rejection within the contemplation of Patent Office Rule 196(b) and MPEP 1214.01(B). Accordingly, while we express no opinion on the propriety of the board's rejection of the claims because of the "0.17 mg./cc." limitation, the case must be remanded to the board to allow appellants full opportunity to respond to the new rejection.

## MINIMUM 580°C. TEMPERATURE

With respect to this limitation, the board stated: "While it is true that this temperature falls within the appellants' range of operation (400–700°C.), there is no basis in the original disclosure to limit operation of the device within a subportion of this range (i. e., 580°C. and higher)." Thus, the board misstated appellants' range, which is 450 to 700°C.

Appellants' specification reads: "The arc tube 12 is provided with a filling of mercury in a quantity such as to *vaporize completely* when a pressure in the order of one half to several atmospheres is reached during normal lamp operation at temperatures of 450 to 700°C." (Emphasis supplied.)

Although describing a minimum temperature of 580°C. on the arc tube when the lamp is operated, the Edris patent also states that some of the iodides in the filling will condense at "the coolest portion" of the arc tube during operation; that "The charge of mercury is present in predetermined amount so that when the mercury is *fully vaporized* during operation of the lamp, the proper voltage drop across the lamp and power input to the lamp will be realized"; and that the mercury charge will be heated

---

4. The rule provides: "Should the Board of Appeals have knowledge of any grounds not involved in the appeal for rejecting any appealed claim, it may include in its decision a statement to the effect with its reasons for so holding, which statement shall constitute a rejection of the claims. The appellant may submit an appropriate amendment of the claims so rejected or a showing of facts, or both, and have the matter reconsidered by the primary examiner. . . . The applicant may waive such reconsideration before the primary examiner and have the case reconsidered by the Board of Appeals upon the same record before them."

to a *"fully vaporized* condition." (Emphasis supplied.)

We believe a reading of the specification and the Edris patent indicates that vaporization of the filling is what is important, and this conclusion is reinforced by the board's holding that the *dropping* of the minimum 580°C. temperature limitation from claim 21 (which calls for a minimum temperature "sufficient to vaporize") did not constitute "new matter."

The foregoing compels the conclusion that the operating temperatures of appellants' invention and the Edris patent serve the same purpose (vaporization) and that substantially the same invention is involved. Appellee cites Storchheim v. Daugherty, 56 C.C.P.A. 1147, 410 F.2d 1393, 161 U.S.P.Q. 679 (1969), but we think that Hall v. Taylor, 51 C. C.P.A. 1420, 332 F.2d 844, 141 U.S.P.Q. 821 (1964), where the ranges involved were held *not* to define different inventions, is in point. There we said:

> While we realize that all limitations of a claim must be considered in deciding what invention is defined, it is futile merely to compare *quantitatively* range limits and numbers set out in counts with range limits and numbers disclosed in an allegedly supporting specification. Closer scrutiny is required to get at the essence of what invention the count purports to define." (Emphasis in original).

See also Den Beste v. Martin, 45 C.C.P. A. 798, 252 F.2d 302, 116 U.S.P.Q. 584 (1958).

Ex parte O'Reilly, 162 U.S.P.Q. 499 (PO Bd. App.1968), also cited by appellee, involved a "critical limitation" found by the board, which merely allies that case with *Storchheim.*

Finally, we note that, under Rules 204, 205, and 206 of the Patent Office, MPEP 1101.02 specifically authorizes action similar to that taken here by appellants. Section · C.I.(b) thereof sets forth an example of a patent claim with a range of 10–80. In attempting to provoke an interference, the applicant is allowed to present a claim to a temperature range of 20–80, notwithstanding that his specification discloses a range of 20–90.

 We hold, therefore, that no "new matter" has been claimed by appellants in copying the minimum operating temperature of the Edris patent.

The decision of the board is reversed and the case remanded for proceedings in accordance with this opinion.

Reversed and remanded.